Chambord Benton-Hayes (SBN 278970)
chambord@bentonemploymentlaw.com
BENTON EMPLOYMENT LAW
2831 Telegraph Avenue
Oakland, California 94609
Telephone: 510.650.0250

Attorney for Plaintiffs
Cameron Gazaway and Robert Wilson

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| CAMERON GAZAWAY and ROBERT WILSON, <br><br> Plaintiffs, <br><br> v. <br><br> BILL NELSON, ADMINISTRATOR, NATIONAL AERONAUTICS AND SPACE ADMINISTRATION; AMERICAN PARAGON PROTECTIVE SERVICES, LLC; AMERICAN EAGLE PROTECTIVE SERVICES CORPORATION; CHENEGA GLOBAL PROTECTION, LLC ; and, DOES 1 through 50, Inclusive, <br><br> Defendants. | Case No. 5:23-cv-04781-PCP <br><br> **FIRST AMENDED COMPLAINT FOR DAMAGES** <br><br> 1. **Age Discrimination in Violation of FEHA;** <br> 2. **Age Discrimination in Violation of the ADEA;** <br> 3. **Race Discrimination (including The Crown Act) in Violation of FEHA;** <br> 4. **Race Discrimination in violation of Title VII;** <br> 5. **Religious Discrimination and Harassment in Violation of FEHA;** <br> 6. **Religious Discrimination and Harassment in Violation of Title VII;** <br> 7. **Associational Discrimination (Race and Religion) in Violation of FEHA;** <br> 8. **Retaliation in Violation of FEHA and Whistleblower Retaliation;** <br> 9. **Retaliation in Violation of Title VII;** <br> 10. **Retaliation in Violation of the NLRA;** <br> 11. **Failure to Prevent Discrimination, Harassment, and Retaliation in Violation of FEHA; and,** <br> 12. **Wrongful Termination in Violation of Public Policy; and,** <br> 13. **Wrongful Termination in Violation of Title VII.** <br><br> **(JURY TRIAL DEMANDED)** |

1    Plaintiffs CAMERON GAZAWAY and ROBERT WILSON demanding a jury trial,

2  bring this action against Defendants BILL NELSON, ADMINISTRATOR, NATIONAL

3  AERONAUTICS AND SPACE ADMINISTRATION; AMERICAN PARAGON

4  PROTECTIVE SERVICES, LLC ("APPS"); AMERICAN EAGLE PROTECTIVE SERVICES

5  CORPORATION ("AEPS"); CHENEGA GLOBAL PROTECTION, LLC; and, DOES 1

6  through 50, Inclusive, for general, compensatory, punitive, liquidated damages, and statutory

7  damages, and costs and attorney's fees resulting from Defendants' unlawful conduct, and as

8  grounds therefore alleges as follows:

9                                   **INTRODUCTION**

10   1.   For over twenty-eight (28) years, Plaintiffs Battalion Chiefs ("BC") Cameron

11  Gazaway and Robert Wilson dedicated their lives to protecting others at Defendant National

12  Aeronautics and Space Administration Agency's ("NASA") Moffett Field.  For on or around

13  twenty-one (21) of those years, they served as BCs.  They loved their jobs and were very close

14  with their Fire Department colleagues.  They were both especially proud to have served on safety

15  details for Presidents Bill Clinton, George Bush, and Barack Obama, as well as Vice Presidents,

16  government officials, and numerous international dignitaries, including the Prime Minister of

17  Israel.  Anticipating many more years of service, they looked forward to retiring from NASA's

18  Moffett Field.

19   2.   This all abruptly ended when joint employers Fiore, NASA, American Paragon

20  Protective Services, LLC, ("APPS"), and Chenega Security & Support Solutions

21  ("CHENEGA"), terminated Plaintiffs Gazaway and Wilson for not having an associate degree

22  ("AA") in Fire Science.  They were told—without an AA in Fire Science—they were no longer

23  qualified to do the jobs they had been performing for the last twenty-one (21) years.  They were

24  given less than 45 days' notice and no time to obtain the AA in fire science.  No extensions were

25  granted.  Two separate universities' certifications that Plaintiffs' respective years of experience

26  and training far exceeded this requirement were rejected. An AA in Fire Science was not required

27  at any other NASA location.  This educational requirement targeted and only impacted Plaintiffs

28  Gazaway and Wilson.  With this new requirement, they were expected to have more educational

1    training than the Fire Chief (one of their direct supervisors).

2        3.    Plaintiffs made legally-protected complaints and/or "protected disclosures" in

3    person and in writing, including but not limited to Congresswoman Anna Eshoo; Fiore,

4    Defendant NASA, APPS, and CHENGA'S management and Defendant NASA's internal Equal

5    Employment Opportunity Office (all were authorized recipients pursuant to Defendant NASA's

6    regulations).

7        4.    Plaintiffs Gazaway and Wilson were targeted because they were both over fifty

8    (50) years old, complained about ongoing illegal practices, and had been forming a union for

9    protection from these practices.  Plaintiff Gazaway was one of the few African Americans in the

10   department and was experiencing discriminatory comments and treatment because of his age,

11   race, and religion (Messianic Christian). Simultaneously, Plaintiff Wilson was also experiencing

12   mistreatment and harassment with ageist comments, and because of his association with Plaintiff

13   Gazaway.  On or around September 30, 2022, Plaintiffs were both wrongfully and retaliatorily

14   terminated because of the arbitrary fire science degree requirement.

15   **NATURE OF THE ACTION**

16       5.    This is an age, race, religious, racial association, and union association

17   discrimination and retaliation case to vindicate the rights afforded to Plaintiffs under The Age

18   Discrimination Act of 1967, Title VII of the Civil Rights Act of 1964, California Fair

19   Employment and Housing Act ("FEHA"), Government Code sections 12940, *et seq*. and other

20   applicable laws as set forth below.  Plaintiffs were treated differently because of their age, race,

21   religious beliefs, as well as attempting to unionize their positions, and because they complained

22   to their supervisor, and representatives of each Defendant about the mistreatment they

23   experienced.

24       6.    Defendant NASA is a United States government agency that is responsible for

25   science and technology related to air and space.  Defendant NASA operates Moffett Field in

26   Santa Clara County, California. Defendant NASA contracts out fire services. Defendants

27   CHENEGA and APPS were awarded the contract for fire services at Moffett Field.  Defendants

28   CHENEGA and APPS sub-contracted with Fiore Industries, Inc. Plaintiffs were employed by

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

Fiore Industries, Inc., and joint employers NASA, CHENEGA and APPS as BCs at Moffett Field.

7.     At all times herein, Plaintiffs were special employees of Defendants NASA, CHENEGA, and APPS as each Defendant controlled Plaintiffs' activities along with employer Fiore Industries, Inc.  Plaintiffs performed work of interest to each Defendant joint employers.

8.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to this Complaint Defendant BILL NELSON is the Administrator and Official Agency Head of NASA, an Agency of the United States of America.   On information and belief, Defendant NASA was one of Plaintiffs' joint employers in the relevant time period.

9.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to this Complaint, Defendant Keith Siuda is the Fire Marshal of NASA Ames Fire Department, an Agency of the United States of America.  On information and belief, Defendant NASA was one of Plaintiffs' joint employers in the relevant time period. As a management employee, he acted in conjunction with, ratified, endorsed, or otherwise partook in all actions taken by Defendant NASA.

10.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to this Complaint, Defendant Lynn Bala is Security Administrator at NASA Ames Fire Department, an Agency of the United States of America.  On information and belief, Defendant NASA was one of Plaintiffs' joint employers in the relevant time period. As a management employee, she acted in conjunction with, ratified, endorsed, or otherwise partook in all actions taken by Defendant NASA.

11.     Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to this Complaint, Defendant CHENEGA is a limited liability company authorized to operate in the State of California with its principal place of business in Anchorage, Alaska. On information and belief, Defendant CHENEGA was one of Plaintiffs' joint employers during the relevant time period. Rick Anderson (CHENEGA Prime Contract Manager) as a management employee, acted in conjunction with, ratified, endorsed, or otherwise partook in all actions taken by Defendant CHENEGA.

12. Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to this Complaint, Defendant APPS is a limited liability company authorized to operate in the State of California with its principal place of business in Lender, Texas. On information and belief, Defendant APPS was one of Plaintiffs' joint employers during the relevant time period. AEPS is a sister company to APPS. Herein, any time APPS is referenced said statement equally applies to APPS' sister company, AEPS. Shane Reinhart (APPS Prime Contract Manager), as a management employee, acted in conjunction with, ratified, endorsed, or otherwise partook in all actions taken by Defendant APPS and AEPS.

13. Plaintiffs are informed and believe, and based thereon allege that, at all relevant times, each of the Defendants, whether named or fictitious, was the agent, employee, or alter ego of each of the other defendants, and in doing the things alleged in the Complaint, acted within the scope of such agency or employment or ratified the acts of the other.

14. Whenever and wherever reference is made in this Complaint to any act or failure to act by a Defendant or Co-defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each defendant acting individually, jointly, and severally.

15. On information and belief, Defendant joint employers employ at least five (5) employees and are therefore subject to the California Fair Employment and Housing Act, California Government section 12900, *et. seq.* ("FEHA").

16. On information and belief, Defendant joint employers employ at least fifteen or more employees and are therefore subject to Title VII of the Civil Rights Act of 1964 (Title VII);

17. On information and belief, Defendant joint employers employ at least twenty (20) or more employees and are therefore subject to The Age Discrimination in Employment Act of 1967 ("ADEA").

18. In addition, Defendants compelled, coerced, aided, and abetted the discrimination, harassment, and retaliation which is prohibited under California Government Code section 12940(i).

19. Plaintiffs are informed and believe and thereupon allege that, at all times material herein, Defendants, and/or their respective agents, employees, or supervisors knew or reasonably

1   should have known that unless they intervened to protect Plaintiffs, otherwise penalize the
2   conduct of the employees of Defendant joint employers set forth above, the remaining
3   Defendants and employees perceived the conduct and omissions as being ratified and condoned.

4   **JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT**

5   20.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 451, 1331 and 1337. This
6   action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 (Title
7   VII); The Age Discrimination in Employment Act of 1967 (ADEA); and, The Fair Employment
8   and Housing Act (California Government Code§ 12900, *et seq*.).

9   21.     Venue is proper in The Northern District of California because Plaintiffs'
10  employment occurred, and the unlawful practices were committed, at Moffett Field in Santa
11  Clara County, California.

12  22.     Because this action arose in Santa Clara County, it should be assigned to the San
13  Jose Division of this Court.

14  **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

15  23.     Plaintiff Gazaway exhausted all of his federal administrative remedies.  On June
16  28, 2023, The U.S. Equal Employment Opportunity Commission ("EEOC") issued a Right-To-
17  Sue letter for Defendants APPS, AEPS, and CHENEGA.  On July 28, 2023, Defendant NASA
18  issued a final decision and a right to file a civil action in Federal District Court.

19  24.     Plaintiff Wilson exhausted all of his federal administrative remedies. The U.S.
20  Equal Employment Opportunity Commission ("EEOC") issued a Right-To-Sue letter on June
21  27, 2023, as to Defendant APPS, AEPS, and on June 29, 2023, as to Defendant CHENEGA. On
22  July 28, 2023, Defendant NASA issued a final decision and a right to file a civil action in Federal
23  District Court.

24  **FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION**

25  ***Plaintiff Gazaway Commences His Career at Defendant NASA's Moffett Field***

26  25.     On February 1, 1994, Plaintiff Gazaway was hired as a Firefighter by a
27  predecessor of employer Fiore and a predecessor of joint employer Defendants NASA, APPS,
28  and CHENEGA.  He worked at Defendant NASA's Ames Research Center Fire Department at

Moffett Field in Mountain View, California. He was promoted approximately five times over his career.  In or around 2001, he was promoted to BC.  In or around 2020, Plaintiff's Gazaway salary was approximately $190,578.80 with health plan benefits of $13,220 and other ancillary benefits.

26.     Plaintiff Gazaway is African American, a Messianic Christian, and as of the date of his wrongful termination, fifty-three (53) years of age.

27.     Throughout his career, Plaintiff Gazaway had stellar performance, and he was praised for his fire safety knowledge. In fact, he was featured on the show "Myth Busters" on the Discovery Channel as a Safety Officer and Consultant representing Defendant NASA.

### *Plaintiff Wilson Commences His Career at Defendant NASA's Moffett Field*

28.     On or around February 1, 1994, Plaintiff Wilson was hired as a Firefighter by a predecessor of employer Fiore and a predecessor of joint employer Defendants NASA, APPS and CHENEGA.  He worked at Defendant NASA's Ames Research Center Fire Department at Moffett Field in Mountain View, California. In or around 1999, Plaintiff Wilson was promoted to BC. He had several pay increases with his final salary being approximately $190,578.80 plus health plan benefits (approx. $13,220) and other ancillary benefits.

29.     Plaintiff Wilson was fifty-three (53) years old at the time of his wrongful termination.

30.     Plaintiff's performance was stellar, and he was also praised for his fire safety knowledge.

### *Plaintiffs Gazaway and Wilson's Over 28 Year Careers at NASA's Moffett Field and Employed Jointly by NASA, APPS, and CHENEGA*

31.     In 2009, Plaintiffs Gazaway and Wilson went back to school and earned associate degrees in business and general studies at the University of Phoenix.  This allowed them to be compliant with the requirements of their Defendant employers and joint employers.  They were given ample time to complete this requirement and were not fired while obtaining their AA degrees. This educational requirement was subsidized by Defendant NASA.

/ / /

32.     Fiore, with joint employers Defendants NASA, APPS, and CHENEGA, required Plaintiffs to receive annual training, pre-employment certifications, and provided daily on-the-job training.  Plaintiffs had ensured compliance, safety, and prevention continuously for military families on base housing, in daycare centers, the 129th Air National Guard, various military and civilian aircraft, and surrounding communities – all while enduring multiple contract changes, government shutdowns, policy shifts, national emergencies, terrorism, COVID-19, and worldwide conflicts.  They also intimately knew how Defendant NASA worked.

33.     Fiore, along with Defendant joint employers NASA, APPS, and CHENEGA, had control over when, where, and how Plaintiffs Gazaway and Wilson performed their job duties. Defendant NASA furnished the fire trucks, uniforms, office space, premises (Moffett Field), and any and all equipment required to perform Plaintiffs' job duties.  Since on or around February 1, 1994, Plaintiffs performed all their job duties on NASA's premises at Moffett Field.

34.     Fiore, along with  joint employer Defendants NASA, APPS,  and CHENEGA, had the right and often did assign additional projects to Plaintiffs. Many of these assignments from joint employers NASA, APPS and CHENEGA did not require a high level of expertise. Defendants set all of Plaintiffs' hours via contracts.  At all times herein, Plaintiffs were salaried employees not paid for performing a particular job. Plaintiffs never hired or paid assistants.

35.     Fiore, along with Defendants NASA, APPS, and CHENEGA, and individuals Lynn Bala, Keith Suida, Shane Reinhart (APPS Prime Contract Manager), Rick Anderson (CHENEGA Prime Contract Manager), all negotiated the terms, conditions, and privileges of Plaintiffs' employment agreement called the NASA Fire Services Contract ("NFSC"). Likewise, Defendants controlled any changes, modifications, accommodations, or additional time to comply with the requirements set forth in the NFSC.

36.     Fiore, along with Defendants NASA, APPS, and CHENEGA, and individuals Bala, Suida, Aderson, and Reinhart, all negotiated the terms, conditions, and privileges of Plaintiffs performance work statements and annexes.

37.     Fiore, along with Defendants NASA, APPS, and CHENEGA, and individuals Lynn Bala, Keith Suida, Shane Reinhart (APPS Prime Contract Manager), controlled the terms,

conditions, and privileges of Plaintiffs' employment including but not limited to their hiring, shift changes, continued employment, termination, educational changes, educational waivers, and other ongoing employment issues.

38.    Plaintiffs met with Defendant APPS management including Mr. Reinhart regarding their employment generally as well as their fear of and complaint about their potential termination.

39.    Plaintiffs met with Defendants NASA, APPS, and CHENEGA from commencing the NFSC, throughout the duration of the contract, on various employment issues, and upon transition to a new contract.

40.    Often daily, and at all incident scenes, Plaintiffs, reported directly to NASA and APPS management and organized their plan(s) of action. Plaintiffs often reported to Reinhart of APPS. NASA, including NASA's Fire Marshall, and APPS, all had oversight and ultimate authority over all incident scenes and emergencies.

41.    During meetings there were welcome mats used which included the names of officials at NASA and APPS.

42.    Plaintiffs were required to inform NASA's Fire Chief for every single call they responded to and also give notice to APPS. These calls were made 24 hours a day based on Plaintiffs respective shifts.

43.    APPS' compliance officer or manager had daily oversight over any and all equipment, trucks, tools, and materials used in performing their job duties and responding to emergencies. Plaintiffs reported to APPS compliance manager regularly to ensure all materials functioning and were up to the necessary standards. The compliance officer also had oversight and reviewed Plaintiffs schedules. Said compliance officer regularly conducted site visits at Moffett Field.

44.    In addition to satellite assets, Defendant NASA operates a fleet of aircraft and airborne sensors that contribute to risk reduction, response, and recovery from wildland fires. Services under the Defendant NFSC include fire operations and firefighting; emergency medical services, including fire protection; fire prevention inspection program; fire services training; fire

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

investigations; hazardous materials response; technical rope and confined space rescue. Defendants APPS  and CHENEGA also are in the business of fire, security, and protective services.

45.     Defendants provided Plaintiffs with a multitude of benefits both financial and health-wise.   At all times herein, Fiore and joint employer Defendants NASA, APPS, and CHENEGA could discharge Plaintiffs Gazaway and Wilson.  On information, belief, and daily practice, Plaintiffs Gazaway and Wilson were employees of all Defendants.

46.     During their over 28 years working together, Plaintiffs Gazaway and Wilson became great colleagues and friends.  They were proud to serve as BCs preventing fires, responding to emergencies, and risking their lives to protect others.  They believed they were both assets to the Defendants' continued commitment to excellence.  Their dedication to the successful and peaceful endeavors of this nation never wavered. They helped build from the ground up the Fire Department at Moffett Field.

***Defendants Make Ongoing Discriminatory Comments Against Plaintiffs***

47.     In approximately 2018-2019, William ("Bill") Bonner was hired by employer Fiore as a BC (management). Early in his employment, Mr. Bonner accused Plaintiff Gazaway of leaving pubic hair in the sink after a shift change.  Plaintiff Gazaway attempted to explain that the hair in the sink was his head hair, and that African American hair comes in many textures and curl patterns, that the hair in the sink was certainly not pubic hair. In spite of this explanation, a humiliating investigation was launched, and Plaintiff Gazaway was forced to sign disciplinary documentation ratified and approved by management of Defendants NASA and APPS.  As a result of this discriminatory investigation by two white men (Mr. Bonner and John Poell), Plaintiff Gazaway was forced to change his preferred shift, which he had held for over 15 years. Mr. Bonner was subsequently promoted to Fire Chief. Mr. Gazaway was humiliated by this incident.

48.     Commencing in or about March 2020, Keith Siuda (Manager, Fire Protection POC at NASA)[1] made remarks regarding Plaintiff Gazaway's age, including "you're looking

[1] Siuda is presently NASA's Fire Marshal.

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

more and more gray;" "you're sure looking old;" "you're looking older than me;" and "look at all that gray." These comments made Plaintiff Gazaway uncomfortable, and he asked Siuda to stop making them. Defendant Siuda continued to make these comments on his frequent visits to Defendant NASA's station. At all times herein, Siuda was acting as a managing agent of Defendant NASA.

49.     During this same time, Siuda, as well as others, made comments to Plaintiff Wilson about his age, including that he was "being too old" and called him "old man." There were jokes about Plaintiff Wilson's ability to perform physical tasks. Specifically, during the annual physical agility testing, there were jokes about whether he would pass that year. Plaintiff Wilson became increasingly uncomfortable with the frequency of these comments and jokes.

50.     During that same time, Siuda also made comments about Plaintiff Gazaway's beard. As a Messianic Christian, Plaintiff had an approved religious accommodation with Title VII of the Civil Rights Act of 1964 for his beard.

51.     In or around 2020, OSHA sent five (5) inspectors to the station to evaluate self-regulation. Defendant Siuda was the NASA escort to the OSHA evaluators. During the inspection, an African American woman asked Plaintiff Gazaway several specific questions regarding their operations. He answered her questions knowledgeably and professionally. She then requested a demonstration. Siuda approved. Plaintiff Gazaway took her out for a 10-minute demonstration. After additional questions, the inspector was satisfied and cut the inspection shorter than anticipated. They passed the inspection with flying colors.

52.     After the inspection, Siuda made two inappropriate comments about Plaintiff Gazaway. He suggested Plaintiff Gazaway's success was due to his "magic beard." Plaintiff Gazaway was insulted by this belittling comment about his religion and religious beard. Mr. Siuda further stated that Plaintiff Gazaway's success was because "she liked him," implying that the inspector showed him favoritism because she was attracted to his "magic beard" and gave him preference because of his race (African American), rather than his professionalism, experience, and success in competently addressing all of her questions and concerns as a knowledgeable fire officer.

53.     In or around May or June of 2022, Mr. Stacey Ettel (Vice President of Fiore) came as part of a corporate visit to the fire station at NASA's Moffett Field.  After some time in discussion, he turned to Plaintiff Gazaway and asked in a sarcastic way "What's up with the beard?"  This was yet another discriminatory comment and interaction in the workplace.

54.     Siuda was regularly the Santa for Defendant NASA's Christmas party at Defendant NASA's Moffett field.  Plaintiff Gazaway felt pressured to participate, even though it was contrary to his religious beliefs, and felt that if he did not, Defendant Siuda would retaliate against him.  At all times herein, Defendants NASA, CHENEGA and APPS and their management participated in said holiday and other celebrations.

### *Plaintiffs Seek Union Membership*

55.     In or around October 2021, Plaintiffs Gazaway and Wilson sought to join a union for firefighters, Union I-79.  They felt they were being treated unfairly by Fiore and Defendants NASA, CHENEGA and APPS  in regard to their compensation.  Plaintiffs believed they were misclassified, not promoted, not able to use their available leave (vacation and sick leave), and the discrimination (age, race, and religion) was ongoing for both of them.  They felt a union would offer the protections they required.  Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS opposed their union membership.  Plaintiffs' union membership was denied. At all times herein, management of NASA, CHENEGA, and APPS was interrelated and shared common management between and among Suida, Bala, Anderson, and Reinhart.  Employer Fiore and joint employers NASA, CHENEGA and APPS had a common ownership and/or financial control over Moffett Field and fire protection services rendered on a daily basis.

56.     When the Union I-79 membership was denied, Plaintiffs Gazaway and Wilson started to form their own BC union.  By August 2022, the Union Charter was adopted as International Association of Fire Fighters ("IAFF") I100, and they awaited only approval from the National Labor Relations Board ("NLRB").  Plaintiffs were terminated before the NLRB certified the Union.

57.     In 2021, Defendant CHENEGA was awarded the Defendant NASA's contract.  However, throughout 2021, APPS continued to oversee the contract until on or around

September 2022. As such, both Defendants APPS and CHENEGA reviewed and submitted proposals to comply with the standards and terms for the contract period months in advance of their submission. Moreover, both Defendants APPS and CHENEGA knew and were given notice of the contract requirements and which of their employees qualified under the contract or would require additional education, training or were out of compliance.

58.    Unbeknownst to Plaintiffs, a new educational requirement was included in the new contract by Defendant NASA.  The new contract required BC positions to have an AA in Fire Science, rather than the AA in any subject, and unlike other positions, there was no work experience equivalency offered in lieu of this specific degree.  The contract required all BCs to meet this educational standard by October 1, 2022.   BCs were the *only* position required to have a specific college degree, and *only* BCs at Ames Research Center required the degree, thus the contract change targeted and impacted only Plaintiffs.  Plaintiff Gazaway and Wilson were targeted by this requirement.

59.    Employer Fiore, joint employer Defendants NASA, CHENEGA and APPS and individuals Siuda, Bala, Reinhart, and Anderson all failed to tell Plaintiffs of the changed educational requirement until August 18, 2022, less than 45 days in advance of the deadline to meet the requirement.  This was intentional conduct by said Defendants to prevent Plaintiffs Gazaway and Wilson from meeting the new educational requirement.

60.    Undeterred, Plaintiffs Gazaway and Wilson submitted documentation from two (2) educational institutions which stated that they had exceeded the requirements for the required degrees but would not be able to be conferred with the degree within the short time-frame provided in the new contract.

61.    Plaintiffs requested a reasonable accommodation of time to meet the requirements, as little as ninety (90) days.  In all previous contracts with Defendants NASA, CHENEGA and APPS, Plaintiffs Gazaway and Wilson had been given ample time to comply with any new or additional requirements.  Plaintiffs were given up to as long as eighteen (18) months to ensure compliance and avoid undue hardships.  All other positions on the new fire contract were given time to meet any educational deficiencies.  Those that were not provided the

1   extra time specifically in the contract were covered under the Union I-79 agreement requiring a

2   minimum of six (6) months' grace period to attempt to meet any new requirements.

3       62.    Employer Fiore and Defendants NASA, CHENEGA and APPS denied this

4   request based on communication from "the Government" that stated that they would not grant

5   an exception to the requirement for a BC to have an AS Degree in Fire Science effective October

6   1, 2022.  No exceptions.  They further rejected the documentation from Oregon University

7   stating Plaintiffs had surpassed the educational requirement of an AA degree in Fire Science as

8   required.  Siuda,  Bala, Anderson, and Reinhart, requested, approved, and ratified this denial.

9       63.    Plaintiffs Gazaway and Wilson made legally-protected complaints multiple times

10  to Defendants about their discriminatory and retaliatory treatment based on age, race, and other

11  protected  categories.  Once  their  job  was  in  jeopardy,  Plaintiffs  made  legally-protected

12  complaints and/or "protected disclosures" in-person and in-writing including but not limited to:

13  Congresswoman Anna Eshoo; Fiore, Defendant NASA, APPS, and CHENGA's management

14  and Defendant NASA's internal Equal Employment Opportunity Office (all were authorized

15  audiences pursuant to Defendant NASA's regulations).

16      64.    On or around August 2022, Plaintiffs also spoke with Rick Anderson (Contract

17  Manager  for  CHENEGA).  They  discussed  the  educational  waiver  and  their  employment.

18  Plaintiffs further complained to Anderson that they were being mistreated.

19      65.    Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS

20  notified Plaintiffs that because they did not meet the educational requirement, their employment

21  was being terminated effective September 30, 2022, thus ending Plaintiff Gazaway and Wilson's

22  28 years of service (each) at NASA's Moffet Field. Siuda, Bala, Anderson, Reinhart, requested,

23  approved, and ratified this discriminatory, retaliatory, and wrongful termination.

24      66.    Unlike Plaintiffs, several employees remain employed under NFSC at Moffett

25  Field and elsewhere out of compliance with the terms of said contract. Siuda, Bala, Anderson,

26  Reinhart  requested,  approved,  and  ratified  this  discriminatory,  retaliatory,  and  wrongful

27  termination.

28  / / /

# FIRST CAUSE OF ACTION

## AGE DISCRIMINATION FEHA
(As to ALL PLAINTIFFS, Against DEFENDANT CHENEGA and APPS)
(California Government Code §§ 12940(a), *et seq. and* 12941))

67.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

68.     Plaintiffs were at all times material hereto employees covered by FEHA.

69.     Employer Fiore and joint employer Defendants CHENEGA and APPS were at all times material hereto a joint employer with Fiore within the meaning of the FEHA, and as such, barred from discriminating in employment decisions on the basis of age. At all times herein, Defendants controlled all aspects of Plaintiffs' employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

70.     Pursuant to Government Code § 12940(a), it is unlawful for an employer to discriminate against an employee because of the employee's age.

71.     As employees over the age of forty (40), Plaintiffs are members of a protected class. Defendants discriminated, targeted, and wrongfully terminated Plaintiffs on the basis of their age in violation of the California FEHA and the ADEA including but not limited to making stray ageist remarks, commenting on their age, gray hair, and fitness for duty. Further, they made job and education requirements that only impacted Plaintiffs. They also retaliated against Plaintiffs for their legally-protected complaint of discrimination and unfair treatment within less than 90 days (SB 497) because of their age.

72.     Plaintiffs were subjected to adverse employment actions including but not limited to retaliatory and wrongful termination because of their age. Plaintiffs complained about their discriminatory and wrongful termination based on age, race, and other protected categories. Defendants failed to conduct a good faith and timely investigation.

73.     Defendants' discriminatory actions against Plaintiffs, as alleged above, constituted unlawful discrimination in employment on account of Plaintiffs' age, in violation of FEHA and ADEA. Anderson (CHENEGA management) and Reinhart (APPS management) were aware of, approved, and ratified this discrimination.

///

74.     That Defendants' conduct was the substantial factor in causing Plaintiffs' harm.

75.     As a direct and proximate result of the unlawful conduct of discrimination by Defendants, Plaintiffs have suffered and continue to suffer damages including but not limited to loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiffs would have received had they not been terminated by Defendants.

76.     As a further direct and proximate result of the unlawful conduct and discrimination by Defendants, Plaintiffs have suffered and continue to suffer emotional distress, embarrassment, humiliation, mental anguish, and anxiety, all to their damage in an amount in excess of jurisdictional requirements and according to proof.

77.     Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiffs' rights.

78.     Therefore, in addition to compensatory damages, Plaintiffs are entitled to recover attorney's fees, liquidated and punitive damages from Defendants in an amount according to proof.

## SECOND CAUSE OF ACTION

### AGE DISCRIMINATION ADEA
(As to ALL PLAINTIFFS, Against DEFENDANTS NASA, CHENGA, APPS,)
(ADEA, 29 U.S.C. § 623))

79.     Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

80.     Plaintiffs were at all time material hereto employees covered by ADEA.

81.     Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the ADEA, and as such, barred from discriminating in employment decisions on the basis of age. At all times herein, Defendants controlled all aspects of Plaintiffs' employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

82.     Pursuant to 29 U.S.C. § 623, it is unlawful for an employer to discharge any individual or otherwise discriminate against any individual because of such individual's age.

/ / /

83. Fiore and Defendants NASA, CHENEGA, and APPS wrongfully terminated Plaintiffs.

84. As employees over the age of forty (40), Plaintiffs are members of a protected class. Defendants discriminated, targeted, and wrongfully terminated Plaintiffs on the basis of their age in violation of the ADEA including but not limited to making stray ageist remarks, commenting on their age, gray hair, and fitness for duty. Further, they made job and education requirements that targeted and only impacted Plaintiffs.

85. Defendants wrongfully terminated Plaintiffs because of their age.

86. Plaintiffs were subjected to adverse employment actions including but not limited to retaliatory and wrongful termination because of their age. Plaintiffs made legally-protected complaints about their discriminatory and wrongful termination based on age, race, and other protected categories.  No good faith, timely investigation was conducted.

87. Defendants' discriminatory actions against Plaintiffs, as alleged above, constituted unlawful discrimination in employment on account of Plaintiffs' age, in violation of the ADEA. NASA management Siuda, and Bala, Anderson (CHENEGA management) and Reinhart (APPS management) were aware of, approved, and ratified this discrimination.

88. That Defendants' conduct was the substantial factor in causing Plaintiffs' harm.

89. As a direct and proximate result of the unlawful conduct of discrimination by Defendants, Plaintiffs have suffered and continue to suffer damages including but not limited to loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiffs would have received had they not been terminated by Defendants.

90. As a further direct and proximate result of the unlawful conduct and discrimination by Defendants, Plaintiffs have suffered and continue to suffer emotional distress, embarrassment, humiliation, mental anguish, and anxiety, all to their damage in an amount in excess of jurisdictional requirements and according to proof.

91. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiffs' rights.

92.     Therefore, in addition to compensatory damages, Plaintiffs are entitled to recover attorney's fees, liquidated and punitive damages from Defendants in an amount according to proof.

### THIRD CAUSE OF ACTION

**RACIAL DISCRIMINATION (INCLUDING CROWN ACT VIOLATIONS)**
(As to PLAINTIFF GAZAWAY, Against DEFENDANTS CHENEGA and APPS)
(California Government Code §§ 12940(a), *et seq.*)

93.     Plaintiff Gazaway incorporates all preceding paragraphs as though fully set forth herein.

94.     Under Government Code section 129040(a), it is an unlawful employment practice for an employer to terminate a person, or to discriminate against a person in the terms, conditions, or privileges of employment on the basis of, among other things, their race and hair (Creating a Respectful and Open Workplace for Natural Hair, the "CROWN Act" of 2019 (SB 188) (Government Code section 12926).

95.     Employer Fiore and joint employer Defendants CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the FEHA, and as such, barred from discriminating in employment decisions on the basis of race. At all times herein, Defendants controlled all aspects of Plaintiff's employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

96.     As an African American, Plaintiff Gazaway is a member of a protected class. Defendants discriminated against Plaintiff Gazaway on the basis of his race including retaliatorily and wrongfully terminating him in violation of the California FEHA including but not limited to disciplining him, changing his shift, failing to promote him, making racist stray remarks, and commenting on his hair. Anderson and Reinhart, were aware of, approved, and ratified this discrimination.

97.     Plaintiff's race and hair was the substantial motivating reason for Defendants' mistreatment of him. Ultimately, Plaintiff Gazaway was terminated from his job once he complained about the ongoing racial mistreatment.  No good faith, timely investigation was conducted.

98.     Plaintiff was harmed; and, Defendants' conduct was a substantial factor in causing Plaintiff's harm.

99.     As a direct and proximate result of the unlawful conduct and discrimination by Defendants, Plaintiff has suffered and continues to suffer emotional distress, embarrassment, humiliation, mental anguish, anxiety, loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiff would have received had he not been terminated by Defendant. Damages are in an amount in excess of jurisdictional requirements and according to proof.

100.     Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. Therefore, in addition to compensatory damages, attorney's fees, liquidated damages, Plaintiff is entitled to recover punitive damages from Defendant in an amount according to proof.

101.     Plaintiff has incurred and continues to incur attorney's fees and legal expenses and is also entitled to recover said costs and fees in an amount according to proof at the time of trial pursuant to Government Code section 12965(b).

## FOURTH CAUSE OF ACTION

### RACIAL DISCRIMINATION
(As to PLAINTIFF GAZAWAY, Against DEFENDANTS NASA, CHENEGA, and APPS
(Title VII, 42 U.S.C. § 2000e-2)

102.     Plaintiff Gazaway incorporates all preceding paragraphs as though fully set forth herein.

103.     Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the Title VII, and as such, barred from discriminating in employment decisions on the basis of race. At all times herein, Defendants controlled all aspects of Plaintiff's employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of his day-to-day activities.

104.     Plaintiff Gazaway's work shift was changed and he was wrongfully terminated by Defendants. Ongoing discriminatory comments were made about his race. Siuda, Bala, Anderson, Reinhart, were aware of, approved, and ratified this discrimination.

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

105.     Plaintiff's race and hair were the substantial motivating reasons for Defendants' mistreatment of him. Ultimately, Plaintiff Gazaway was terminated from his job once he made a legally-protected complaint about the ongoing racial mistreatment.  Defendants failed to conduct a good faith and timely investigation.

106.     The Defendants failed to promote Plaintiff Gazaway, changed his shift, and wrongfully terminated him because of his race.

107.     Plaintiff was at all times herein qualified for his position as a BC at Moffett Field. He held the same position for over 21 years. Similarly situated individuals outside of Plaintiff Gazaway's race were not terminated, were given accommodations, were allowed to keep their jobs, and requirements were waived for them. As such, they were treated more favorably than Plaintiff.

108.     Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff Gazaway, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff Gazaway's rights. Therefore, in addition to compensatory damages, attorney's fees, liquidated damages, Plaintiff Gazaway is entitled to recover punitive damages from Defendant in an amount according to proof.

### **FIFTH CAUSE OF ACTION**

**RELIGIOUS DISCRIMINATION AND HARASSMENT IN VIOLATION OF FEHA**
(As to PLAINTIFF GAZAWAY, Against CHENEGA and APPS)
(California Labor Code § 12940(a), *et seq.*) and Title VII, 42 U.S.C. § 2000e *et seq.*)

109.     Plaintiff Gazaway incorporates all preceding paragraphs as though fully set forth herein.

110.     Under Government Code section 129040(a), it is an unlawful employment practice for an employer to terminate a person, or to discriminate against a person in the terms, conditions, or privileges of employment on the basis of, among other things, their religious creed.

111.     Employer Fiore and joint employer Defendants CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the FEHA, and as such, barred from discriminating in employment decisions on the basis of religious creed. At all times herein,

Defendants controlled all aspects of Plaintiff's employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

112.    Defendants discriminated against Plaintiff Gazaway on the basis of his religious creed (Messianic Christian) and observations in violation of the California FEHA including but not limited to making stray remarks about his religious observations in maintaining his beard as well as pressuring Plaintiff to participate in activities, which contradicted Plaintiff's religious beliefs including but not limited to Christmas. Plaintiff had a religious accommodation under Title VII of the Civil Rights Act of 1964 for his beard.

113.    Plaintiff's religious creed was the substantial motivating reason for Defendants' mistreatment of him.  Ultimately, Plaintiff Gazaway was terminated from his job once he complained about the ongoing mistreatment. Defendants failed to do a good faith and timely investigation into his complaints.  Anderson and Reinhart were aware of, approved, and ratified this discrimination.

114.    As a direct and proximate result of the unlawful conduct and discrimination by Defendants, Plaintiff has suffered and continues to suffer emotional distress, embarrassment, humiliation, mental anguish, anxiety, loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiff would have received had he not been terminated by Defendant. Damages are in an amount in excess of jurisdictional requirements and according to proof.

115.    Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. Therefore, in addition to compensatory damages, Plaintiff is entitled to recover punitive damages from Defendant in an amount according to proof.

116.    Plaintiff has incurred and continues to incur attorney's fees and legal expenses and is also entitled to recover said costs and fees in an amount according to proof at the time of trial pursuant to Government Code section 12965(b).

///

///

## SIXTH CAUSE OF ACTION

**RELIGIOUS DISCRIMINATION AND HARASSMENT IN VIOLATION OF TITLE VII**
(As to PLAINTIFF GAZAWAY, Against ALL DEFENDANTS NASA, CHENEGA, and APPS)
(Title VII, 42 U.S.C. § 2000e, *et seq.*)

117.    Plaintiff Gazaway incorporates all preceding paragraphs as though fully set forth herein.

118.    Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS were at all times material hereto a joint employer within the meaning of Title VII, and as such, barred from discriminating in employment decisions on the basis of religious creed. At all times herein, Defendants controlled all aspects of Plaintiff's employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of his day-to-day activities.

119.    Plaintiff Gazaway's work shift was changed and he was wrongfully terminated by Defendants. Ongoing discriminatory comments were made about his religious beliefs. Siuda, Bala, Anderson, Reinhart, were aware of, approved, and ratified this discrimination.

120.    Plaintiff's race and hair was the substantial motivating reason for Defendants' mistreatment of him. Ultimately, Plaintiff Gazaway was terminated from his job once he made a legally-protected complaint about the ongoing religious mistreatment. Defendants failed to conduct a good faith and timely investigation.

121.    The Defendants failed to promote Plaintiff Gazaway, changed his shift, and wrongfully terminated him because of his religion.

122.    Plaintiff was at all times herein qualified for his position as a BC at Moffett Field. He held the same position for over 21 years. Similarly situated individuals outside of Plaintiff Gazaway's religion were not terminated, were given accommodations, were allowed to keep their jobs, and requirements were waived for them. As such, they were treated more favorably than Plaintiff Gazaway.

123.    Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. Therefore, in addition to compensatory damages, Plaintiff is entitled to recover punitive damages from

Defendant in an amount according to proof.

## SEVENTH CAUSE OF ACTION

### ASSOCIATION DISCRIMINATION (RACE AND RELIGION)
(As to PLAINTIFF WILSON, Against DEFENDANTS CHENEGA and APPS)
(California Government Code §§ 12940(a), 12940(o), and 12940(i), (*et seq.*)

124.    Plaintiff Wilson incorporates all preceding paragraphs as though fully set forth herein.

125.    Under Government Code sections 12940(a), 12940(o), and 12940(i), it is an unlawful employment practice for an employer to terminate a person, or to discriminate against a person in the terms, conditions, or privileges of employment on the basis of, among other things, their racial and religious associations.

126.    Employer Fiore and joint employer Defendants CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the FEHA, and as such, barred from discriminating in employment decisions on the basis of association. At all times herein, Defendants controlled all aspects of Plaintiff's employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

127.    As a friend, associate, and close colleague of Plaintiff Gazaway, an African American and a Messianic Christian, Plaintiff Wilson is a member of a protected class. Defendants discriminated against Plaintiff Wilson on the basis of his association with Plaintiff Gazaway in violation of the California FEHA including but not limited to retaliating against him and terminating his employment.

128.    Plaintiff Gazaway's race and religion was the substantial motivating reason for Defendants' mistreatment of Plaintiff Wilson. Ultimately, Plaintiff Wilson was terminated from his job once he supported Plaintiff Gazaway's complaint about the ongoing racial and religious mistreatment of Plaintiff Gazaway, and made his own complaint about his discriminatory and retaliatory treatment.  No good faith and timely investigation was conducted.  Anderson and Reinhart were aware of, approved, and ratified this discrimination.

129.    Plaintiff Wilson was harmed by Defendants' actions; and Defendants' conduct was a substantial factor in causing his harm.

130.     As a direct and proximate result of the unlawful conduct and discrimination by Defendants, Plaintiff Wilson has suffered and continues to suffer emotional distress, embarrassment, humiliation, mental anguish, anxiety, loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiff would have received had he not been terminated by Defendant. Damages are in an amount in excess of jurisdictional requirements and according to proof.

131.     Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. Therefore, in addition to compensatory damages, Plaintiff is entitled to recover punitive damages from Defendant in an amount according to proof.

132.     Plaintiff has incurred and continues to incur attorney's fees and legal expenses and is also entitled to recover said costs and fees in an amount according to proof at the time of trial pursuant to Government Code section 12965(b).

## **EIGHTH CAUSE OF ACTION**

### **RETALIATION**
(As to ALL PLAINTIFFS, Against DEFENDANTS CHENEGA and APPS)
(California Government Code §§ 12940(h), 12940(n), 12940(m) *et seq.*,
Labor Code § 1102.5 and SB 497))

133.     Plaintiffs Gazaway and Wilson incorporate all preceding paragraphs as though fully set forth herein.

134.     Employer Fiore and joint employer Defendants CHENEGA and APPS were at all times material hereto a joint employer within the meaning of FEHA, and as such, barred from retaliating against employees for unionizing, making legally-protected complaints which consisted of whistleblower activity. At all times herein, Defendants controlled all aspects of Plaintiffs' employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

135.     California Government Code section §§ 12940(h), 12940(n), 12940(m) *et seq.* further provides that it is an unlawful employment practice "[f]or any employer . . . to discharge,

expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

136.    As alleged above, Plaintiffs engaged in more than one protected activity during their employment with Defendant joint employers.  Specifically, Plaintiffs complained about their mistreatment by Defendants to Defendants, complained about the discriminatory AA degree in fire science job requirement, attempted to form a collective bargaining unit for BCs and union membership and association (29 U.S.C. §§ 151-169 and the National Labor Relations Act ("NLRA"). Plaintiffs also complained about retaliation against them after their complaints.

137.    Plaintiffs disclosed that they were not allowed to take their sick leave and being treated unfairly as to wages. Plaintiffs made legally-protected complaints and/or "protected disclosures" in-person and in-writing to, including but not limited to: Congresswoman Anna Eshoo; Fiore, Defendant NASA, APPS, and CHENGA'S management and Defendant NASA's internal Equal Employment Opportunity Office (all were authorized audiences pursuant to Defendant NASA's regulations). Defendants CHENEGA and APPS had authority over Plaintiffs and could investigate, discover, or correct these legal violations and noncompliance with laws.

138.    Plaintiffs are informed and believe and thereon allege that because of their legally-protected complaints and attempting to form a collective bargaining unit for BCs (i.e., protected conduct), Defendants subjected Plaintiffs to unwanted retaliatory conduct.   This conduct included terminating the employment of Plaintiffs. Plaintiffs had reasonable cause to believe that the information disclosed was a violation of state, federal and other laws. Anderson and Reinhart were aware of, approved, and ratified this retaliation.

139.    Defendants' retaliatory conduct was a substantial factor in causing Plaintiffs harm, namely that Plaintiffs were forced to suffer, among other injuries lost wages and other compensation benefits, physical and severe emotional distress, and other pecuniary loss, thus causing Plaintiffs damages in an amount according to proof at trial, in excess of the minimum for unlimited jurisdiction of this Court.  Pursuant to California Government Code section 12965(b), Plaintiffs are entitled to reasonable attorney's fees and costs of suit.

140.    Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs, and acted with an improper and evil motive amounting to malice and in conscious disregard of Plaintiffs' rights. Because the acts taken toward Plaintiffs were carried out by Defendants acting in a deliberate, cold, callous, and intentional manner in order to injure and damage Plaintiffs, they are entitled to recover punitive damages from Defendants in an amount according to proof.

## NINTH CAUSE OF ACTION

### RETALIATION
(As to ALL PLAINTIFFS, Against DEFENDANTS NASA, CHENEGA, and APPS)
(TITLE VII, 42 U.S.C. § 2000e-3(a))

141.    Plaintiffs Gazaway and Wilson incorporate all preceding paragraphs as though fully set forth herein.

142.    Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the Title VII, and as such, barred from retailing. At all times herein, Defendants controlled all aspects of Plaintiffs' employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

143.    Title VII makes it an unlawful employment practice for a person covered by the Act to discriminate against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

144.    Plaintiffs disclosed that they were not being allowed to take their sick leave and were being treated unfairly as to wages. Plaintiffs made legally-protected complaints and/or "protected disclosures" in-person and in-writing to, including but not limited to: Congresswoman Anna Eshoo; Fiore, Defendant NASA, APPS, and CHENGA's management and Defendant NASA's internal Equal Employment Opportunity Office (all were authorized audiences pursuant to Defendant NASA's regulations). Defendants NASA, CHENEGA and APPS all had authority over Plaintiffs and could investigate, discover, or correct these legal violations and

noncompliance with laws.

145.     Fiore and joint employer Defendants NASA, CHENEGA and APPS subjected both Plaintiffs to termination and Plaintiff Gazaway to a shift change.

146.     Given the close temporal proximity (less than 45 days), Plaintiff were subjected to the adverse employment action because of their protected activity (legally-protected complaints) and unionizing. Siuda, Bala, Anderson and Reinhart were aware of, approved, and ratified this retaliation.

147.     Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs, and acted with an improper and evil motive amounting to malice and in conscious disregard of Plaintiffs' rights. Because the acts taken toward Plaintiffs were carried out by Defendants acting in a deliberate, cold, callous, and intentional manner in order to injure and damage Plaintiffs, they are entitled to recover compensatory, liquidated and punitive damages from Defendants in an amount according to proof.

### **TENTH CAUSE OF ACTION**

**UNION MEMBERSHIP OR ASSOCIATION RETALIATION IN VIOLATION OF THE NLRA**
(As to ALL PLAINTIFFS, Against DEFENDANTS CHENEGA and APPS)
(29 U.S.C. §§ 151-169)

148.     Plaintiffs Gazaway and Wilson incorporate all preceding paragraphs as though fully set forth herein.

149.     Employer Fiore and joint employer Defendants CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the National Labor Relations Act ("NLRA.") and as such, barred from discriminating in employment decisions on the basis of association. At all times herein, Defendants controlled all aspects of Plaintiffs' employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

150.     Pursuant to 29 U.S.C. §§ 151-169, it is unlawful for an employer to discriminate against an employee because of the employee's union membership or association.

/ / /

151.   Plaintiffs were engaged in protected activity, to wit, organizing a collective bargaining unit for BCs. Defendants discriminated against Plaintiffs on the basis of their union membership or association in violation of the NLRA including but not limited to opposing Plaintiffs' inclusion in an existing union for firefighters and terminating Plaintiffs when they were on the cusp of having a collective bargaining unit for BCs approved by the NLRB. At all times herein, Defendants CHENEGA, and APPS were aware that Plaintiffs were unionizing.

152.   Plaintiffs were subjected to adverse employment action when they were terminated in material part because of their union membership or association.

153.   Defendants' discriminatory actions against Plaintiffs, as alleged above, constituted unlawful discrimination in employment on account of Plaintiffs' union membership or association, in violation of the NLRA.

154.   As a direct and proximate result of the unlawful conduct of discrimination by Defendants, Plaintiffs have suffered and continue to suffer damages including but not limited to loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiffs would have received had they not been terminated by Defendants.

155.   As a further direct and proximate result of the unlawful conduct and discrimination by Defendants, Plaintiffs have suffered and continue to suffer emotional distress, embarrassment, humiliation, mental anguish, and anxiety, all to their damage in an amount in excess of jurisdictional requirements and according to proof.

156.   Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiffs' rights.

157.   Therefore, in addition to compensatory damages, Plaintiffs are entitled to recover punitive damages from Defendants in an amount according to proof.

/ / /

/ / /

/ / /

/ / /

## ELEVENTH CAUSE OF ACTION

**FAILURE TO PREVENT DISCRIMINATION, HARASSMENT,
AND RETALIATION IN VIOLATION OF FEHA**
(As to ALL PLAINTIFFS Against DEFENDANTS CHENEGA and APPS)
(California Government Code § 12940(k))

158.     Plaintiffs Gazaway and Wilson incorporate all preceding paragraphs as though fully set forth herein.

159.     Employer Fiore and joint employer Defendants CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the FEHA, and as such, barred from discriminating in employment decisions and engaging in discrimination, harassment, and retaliation. At all times herein, Defendants controlled all aspects of Plaintiffs' employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

160.     During Plaintiffs' employment Defendant failed to prevent the above-referenced actions of harassment, discrimination, and retaliation including but not limited to ageist and racial comments, and opposition to their union activities, retaliation for legally-protected complaints about their unfair treatment, and Plaintiffs were terminated without the ability to address new educational requirements after complaints about their mistreatment and before the approval of the formation of a collective bargaining unit for BCs  in violation of California Government Code § 12940(k).

161.     Defendants failed to take all reasonable steps to prevent said harassment, discrimination, and retaliation. Further Defendants failure to undertake a prompt and adequate investigation. Anderson and Reinhart were aware of, approved, and ratified this harassment, discrimination, and retaliation.

162.     Plaintiffs were harmed.

163.     Defendants' failure to take all reasonable steps to prevent harassment, discrimination, and retaliation was a substantial factor in causing Plaintiffs' harm.

164.     Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiffs' rights.

165.     As further direct and proximate result of the unlawful conduct and discrimination by Defendants, Plaintiffs suffered and continue to suffer emotional distress, embarrassment, humiliation, mental anguish, and anxiety, all to their damage in an amount in excess of jurisdictional requirements and according to proof.

## TWELFTH CAUSE OF ACTION

**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
(As to ALL PLAINTIFFS Against DEFENDANTS CHENEGA and APPS)
(California Government Code § 12940(a))

166.     Plaintiffs Wilson and Gazaway incorporate all preceding paragraphs as though fully set forth herein.

167.     Employer Fiore and joint employer Defendants CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the FEHA, and as such, barred from wrongfully terminating employees. At all times herein, Defendants controlled all aspects of Plaintiffs employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

168.     Plaintiff Gazaway was retaliatorily and wrongfully terminated because of his age, race, union association, and legally-protected complaint (as protected under FEHA, Title VII, and Labor Code § 1102.5).

169.     Plaintiff Wilson alleges that Defendants terminated his employment because of his age, association (race and religious), union association, legally-protected complaints (as protected under FEHA, Title VII, and Labor Code § 1102.5).

170.     Plaintiffs' respective employment was terminated as a result of Defendants' violation of fundamental public policies. It is against fundamental California public policy, grounded in the FEHA including, but not limited to, California Government Code section 12940(a) and other statutes, to discriminate on the basis of age, race, association (race and religion), and union association, and to retaliate against an employee for opposing and complaining about practices made unlawful by FEHA.

171.     Anderson and Reinhart were aware of, approved, and ratified this discrimination, retaliation, and wrongful termination.

172.   The above-described conduct of Defendants constitutes discrimination, retaliation, and the wrongful termination of Plaintiffs in violation of public policy embodied in FEHA, codified at California Government Code sections 12900-12996, as well as Civil Code sections 51.7, 52.1, 52.4, and 1708.6, and the California Constitution, Article I, Section 8.

173.   A tortious termination subjects the employer to "liability for compensatory and punitive damages under normal tort principles." *Gantt v. Sentry Insurance* (1992) 1 Cal. 4th 1083, 1101.

174.   As a direct and proximate result of the unlawful conduct of discrimination by Defendants, Plaintiffs have suffered and continue to suffer damages including but not limited to the loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiffs would have received had they not been terminated by Defendants.

175.   As a further direct and proximate result of the unlawful conduct and discrimination by Defendants, Plaintiffs have suffered, and continue to suffer, emotional distress, embarrassment, humiliation, mental anguish, and anxiety, all to their damage in an amount in excess of jurisdictional requirements and according to proof.

176.   Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiffs' rights. Therefore, in addition to compensatory damages, Plaintiffs are entitled to recover liquidated and punitive damages from Defendants in an amount according to proof.

## THIRTEEN CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF TITLE VII
(As to ALL PLAINTIFFS Against DEFENDANTS NASA, CHENEGA and APPS)

177.   Plaintiffs Wilson and Gazaway incorporate all preceding paragraphs as though fully set forth herein.

178.   Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the Title VII, and as

such, barred from wrongfully terminating employees. At all times herein, Defendants controlled all aspects of Plaintiffs' employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

179.    Upon information and belief, and based thereon, Plaintiff Gazaway alleges that Defendants retaliatorily and wrongfully terminated his employment because of his age, race, union association (as protected under Title VII) and in retaliation for his complaints on discrimination and retaliation.

180.    Upon information and belief, and based thereon, Plaintiff Wilson alleges that Defendants terminated his employment because of his age, association (race and religious), union association (as protected under Title VII) and in retaliation for his complaints on discrimination and retaliation.

181.    Pursuant Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, it is unlawful for an employer to discharge any individual or otherwise discriminate against any individual because of protected activity or protected category.

182.    Suida, Bala, Anderson, Reinhart, were aware of, approved, and ratified this discrimination, retaliation, and wrongful termination.

183.    As a direct and proximate result of the unlawful conduct of discrimination by Defendants, Plaintiffs have suffered and continue to suffer damages including but not limited to the loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiffs would have received had they not been terminated by Defendants.

184.    As a further direct and proximate result of the unlawful conduct and discrimination by Defendants, Plaintiffs have suffered, and continue to suffer, emotional distress, embarrassment, humiliation, mental anguish, and anxiety, all to their damage in an amount in excess of jurisdictional requirements and according to proof.

185.    Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiffs' rights. Therefore, in addition to compensatory

damages, Plaintiffs are entitled to recover punitive damages from Defendants in an amount according to proof.

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants NASA, CHENEGA, APPS:

1. For past and future compensatory damages, according to proof;

2. For pre- and post-judgment interest at the legal rate;

3. For exemplary, liquidated damages, and punitive damages according to proof;

4. Injunctive, equitable, and declaratory relief;

5. For additional economic losses and costs incurred by Plaintiffs in establishing the claims against Defendants;

6. Attorney's fees and costs of suit; and

7. For such other and further relief, the Court deems proper.

Dated: December 18, 2023                              BENTON EMPLOYMENT LAW

*/s/ Chambord Benton-Hayes*
Chambord Benton-Hayes
Attorney for Plaintiffs
Cameron Gazaway and
Robert Wilson

## __DEMAND FOR JURY  TRIAL__

PLAINTIFFS hereby demand a trial by jury.


Dated: December 18, 2023                    BENTON EMPLOYMENT LAW


                                        _/s/ Chambord Benton-Hayes_
                                        Chambord Benton-Hayes
                                        Attorney for Plaintiffs
                                        Cameron Gazaway and
                                        Robert Wilson

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

# EXHIBIT 1

1  Chambord Benton-Hayes (SBN 278970)
   chambord@bentonemploymentlaw.com
2  BENTON EMPLOYMENT LAW
   2831 Telegraph Avenue
3  Oakland, California 94609
   Telephone: 510.650.0250
4
   Attorney for Plaintiffs
5  Cameron Gazaway and Robert Wilson
6
7               UNITED STATES DISTRICT COURT

8             NORTHERN DISTRICT OF CALIFORNIA

9                    SAN JOSE DIVISION

10 CAMERON GAZAWAY and          Case No. 5:23-cv-04781-PCP
11 ROBERT WILSON,
                                **FIRST AMENDED COMPLAINT
12          Plaintiffs,              FOR DAMAGES**

13       v.                      **1.  Age Discrimination in Violation of
                                    FEHA and the ADEA;**
14 BILL NELSON, ADMINISTRATOR,  **2.  Age Discrimination in Violation of the
   NATIONAL AERONAUTICS AND SPACE    ADEA;**
15 ADMINISTRATION; KEITH SIUDA; LYNN **3.  Race Discrimination (including The
   BALA; AMERICAN PARAGON            Crown Act) in Violation of FEHA;**
16 PROTECTIVE SERVICES, LLC;    **4.  Race Discrimination in violation of
   AMERICAN EAGLE PROTECTIVE         Title VII;**
17 SERVICES CORPORATION; CHENEGA **5.  Religious Discrimination and Harassment
   GLOBAL PROTECTION, LLC CHENEGA    in Violation of FEHA;**
18 SECURITY & SUPPORT SOLUTIONS, **6.  Religious Discrimination and Harassment
   LLC; and, DOES 1 through 50, Inclusive, in Violation of Title VII;**
19                              **1.**
            Defendants.        **2.  Race Discrimination (including The
20                                  Crown Act) in Violation of FEHA and
21                                  Title VII;**
                                **3.     Religious Discrimination and
22                                  Harassment in Violation of FEHA;**
                                **4.7.Associational Discrimination (Race
23                                  and Religion) in Violation of FEHA;**
                                **8.  Retaliation in Violation of FEHA and
24                                  Whistleblower Retaliation and Title
                                    VII;**
25                              **9.  Retaliation for Union Membership
                                    and Association in Violation of Title
26                                  VIIthe NLRA;**
                                **5.10.      Retaliation in Violation of the
27                                  NLRATitle VII;**
                                **6.  Retaliation for Union Membership
28                                  and Association in Violation of the
                                    NLRA;**
                                **7.11.      Failure to Prevent
                                    Discrimination, Harassment, and**

-1-
FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

Retaliation in Violation of FEHA; and,
12. Wrongful Termination in Violation of Public Policy; and,
13. Wrongful Termination in Violation of Public Policy and Title VII.

(JURY TRIAL DEMANDED)

Plaintiffs CAMERON GAZAWAY and ROBERT WILSON demanding a jury trial bring this action against Defendants BILL NELSON, ADMINISTRATOR, NATIONAL AERONAUTICS AND SPACE ADMINISTRATION; AMERICAN PARAGON PROTECTIVE SERVICES, LLC ("APPS"); AMERICAN EAGLE PROTECTIVE SERVICES CORPORATION ("AEPS"); CHENEGA GLOBAL PROTECTION, LLC; KEITH SIUDA; LYNN BALA; AMERICAN PARAGON PROTECTIVE SERVICES, LLC; CHENEGA SECURITY & SUPPORT SOLUTIONS, LLC; and, DOES 1 through 50, Inclusive, for general, compensatory, punitive, liquidated damages, and statutory damages, and costs and attorney's' fees resulting from Defendants' unlawful conduct, and as grounds therefore alleges as follows:

**INTRODUCTION**

1.      For over twenty-eight (28) years, Plaintiffs Battalion Chiefsfirefighters ("BC") Cameron Gazaway and Robert Wilson dedicated their lives to protecting others at Defendant National Aeronautics and Space Administration Agency's ("NASA") Moffett Field.  For on or around twenty-one (21) of those years, they served as BCs.  They loved their jobs and were very close with their Fire Department colleagues.  They were both especially proud to have served on safety details for Presidents Bill Clinton, George Bush, and Barack Obama, as well as Vice Presidents, government officials, and numerous international dignitaries, including the Prime Minister of Israel.  Anticipating many more years of service, they looked forward to retiring from NASA's Moffett Field.

2.      This all abruptly ended when Defendants joint joint employers Fiore, NASA, American Paragon Protective Services, LLC, ("APPS"), and Chenega Security & Support Solutions ("ChenegaCHENEGA"), terminated Plaintiffs Gazaway and Wilson for not having an

-2-

1    associate degree ("AA") in Fire Science.  They were told—without an AA in Fire Science—they

2    were no longer qualified to do the jobs they had been performing for the last twenty-one (21) years.

3    They were given less than 45 days' notice and no time to obtain the AA in fire science.  No

4    extensions were granted.  Two separate universities' certifications that Plaintiffs' respective years

5    of experience and training far exceeded this requirement were rejected.  An AA is~~n~~ Fire Science

6    was not required at any other NASA location.  This educational requirement targeted and only

7    impacted Plaintiffs Gazaway and Wilson.  With this new requirement, they were expected to have

8    more educational training than the Fire Chief (one of their direct supervisor~~s~~).

9    ~~2.~~3.    Plaintiffs made legally-protected complaints and/or "protected disclosures" in-

10   person and in-writing including but not limited to: Congresswoman Anna Eshoo; Fiore, Defendant

11   NASA, APPS, and CHENGA'S management and Defendant NASA's internal Equal Employment

12   Opportunity Office (all were authorized recipients pursuant to Defendant NASA's regulations).

13   ~~3.~~4.    Plaintiffs Gazaway and Wilson were targeted because they were both over 50 years

14   old, complained about ongoing illegal practices, and had been forming a union for protection from

15   these practices.  Plaintiff Gazaway was one of the few African Americans in the department and

16   was experiencing discriminatory comments and treatment because of his age, race, and religion

17   (Messianic Christian). Simultaneously, Plaintiff Wilson was also experiencing mistreatment and

18   harassment with ageist comments, and because of his association with Plaintiff Gazaway.  In or

19   around September 30, 2022, Plaintiffs were both wrongfully and retaliatorily~~pretextually~~

20   terminated because of the arbitrary fire science degree requirement.

21                              **NATURE OF THE ACTION**

22   ~~4.~~5.    This is an age, race, religious, racial association, and union association

23   discrimination and retaliation case to vindicate the rights afforded to Plaintiffs under The Age

24   Discrimination Act of 1967, Title VII of the Civil Rights Act of 1964, California Fair Employment

25   and Housing Act ("FEHA"), ~~and~~ Government Code sections 12940 *et seq.* and other applicable

26   laws as set forth below.  Plaintiffs were treated differently because of their age, race, religious

27   beliefs, as well as attempting to unionize their positions, and because they complained to their

28   supervisor, and representatives of each Defendant about the mistreatment they experienced.

5.6.    Defendant NASA is a United States government agency that is responsible for science and technology related to air and space.  Defendant NASA operates Moffett Field in Santa Clara County. Defendant NASA contracts out fire services.  Defendants CHENEGA and APPS PARAGON were awarded the contract for fire services at Moffett Field.  Defendants CHENEGA and APPSPARAGON sub-contracted with Fiore Industries, Inc. Plaintiffs were employed by Fiore Industries, Inc., and joint employers NASA, CHENEGA and APPS PARAGON as BCsattalion Chiefs at Moffett Field.

6.7.    At all times herein, Plaintiffs were special employees of Defendants NASA, CHENEGA, and APPS AMERICAN PARAGON as each Defendants controlled Plaintiffs' activities along with employer Fiore Industries, Inc.  Plaintiffs performed work of interest to each Defendants joint employers.

7.8.    Plaintiffs are informed and believe, and based thereon alleges, that at all times relevant to this Complaint Defendant BILL NELSON is the Administrator and Official Agency Head of NASA, an Agency of the United States of America.  On information and belief, Defendant NASA was one of Plaintiffs' joint employers in the relevant time period.

8.9.    Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to this Complaint, Defendant Keith Siluda is the Fire Marshal of NASA Ames Fire Department, an Agency of the United States of America.  On information and belief, Defendant NASA was one of Plaintiffs' joint employers in the relevant time period.  As a management employee, he acted in conjunction with, ratified, endorsed, or otherwise partook in all actions taken by Defendant NASA.

9.10.    Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to this Complaint, Defendant Lynn Bala is Security Administrator at NASA Ames Fire Department, an Agency of the United States of America.  On information and belief, Defendant NASA was one of Plaintiffs' joint employers in the relevant time period.  As a management employee, she acted in conjunction with, ratified, endorsed, or otherwise partook in all actions taken by Defendant NASA.

10.11.  Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to this Complaint, Defendant CHENEGA is a limited liability company authorized to operate in the State of California with its principal place of business in Anchorage, Alaska. On information and belief, Defendant CHENEGA was one of Plaintiffs' joint employers during the relevant time period. Rick Anderson (CHENEGA Prime Contract Manager) as a management employee, acted in conjunction with, ratified, endorsed, or otherwise partook in all actions taken by Defendant CHENEGA.

11.12.  Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to this Complaint, Defendant APPS AMERICAN PARAGON is a limited liability company authorized to operate in the State of California with its principal place of business in Lender, Texas. On information and belief, Defendant APPS CHENEGA was one of Plaintiffs' joint employers during the relevant time period. AEPS is a sister company to APPS. Herein, any time APPS is referenced said statement equally applies to APPS' sister company, AEPS. Shane Reinhart (APPS Prime Contract Manager), as a management employee, acted in conjunction with, ratified, endorsed, or otherwise partook in all actions taken by Defendant APPS and AEPS.

12.13.  Plaintiffs are informed and believe, and based thereon allege that, at all relevant times, each of the Defendants, whether named or fictitious, was the agent, employee, or alter ego of each of the other defendants, and in doing the things alleged in the Complaint, acted within the scope of such agency or employment or ratified the acts of the other.

13.14.  Whenever and wherever reference is made in this Complaint to any act or failure to act by a Defendants or Co-defendants, such allegations and references shall also be deemed to mean the acts and/or failures to act by each defendant acting individually, jointly, and severally.

14.15.  On information and belief, Defendants joint employers employ at least five (5) employees and are therefore subject to the California Fair Employment and Housing Act, California Government section 12900, et. seq. ("FEHA").

15.16.  On information and belief, Defendants joint employers employ at least fifteen or more employees and are therefore subject to Title VII of the Civil Rights Act of 1964 (Title VII);

-5-
FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

16.17.  On information and belief, Defendant joint employers employ at least twenty (20) or more employees and are therefore subject to The Age Discrimination in Employment Act of 1967 ("ADEA").

17.18.  In addition, Defendants compelled, coerced, aided, and abetted the discrimination, harassment, and retaliation which is prohibited under California Government Code section 12940(i).

18.19.  Plaintiffs are informed and believe and thereupon alleges that, at all times material herein, Defendants, and/or their respective agents, employees, or supervisors knew or reasonably should have known that unless they intervened to protect Plaintiffs, otherwise penalize the conduct of the employees of Defendant joint employers set forth above, the remaining Defendants and employees perceived the conduct and omissions as being ratified and condoned.

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

19.20.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 451, 1331 and 1337. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 (Title VII); The Age Discrimination in Employment Act of 1967 (ADEA); and, The Fair Employment and Housing Act (California Government Code§ 12900 *et seq.*).

20.21.  Venue is proper in The Northern District of California because Plaintiffs' employment occurred, and the unlawful practices were committed, at Moffett Field in Santa Clara County, California.

21.22.  Because this action arose in Santa Clara County, it should be assigned to the San Jose Division of this Court.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

22.23.  Plaintiff Gazaway exhausted all of his federal administrative remedies.  On June 28, 2023, The U.S. Equal Employment Opportunity Commission ("EEOC") issued a Right-To-Sue letter for Defendants APPS, AEPS, PARAGON and CHENEGA.  On July 28, 2023, Defendant NASA issued a final decision and a right to file a civil action in Federal District Court.

23.24.  Plaintiff Wilson exhausted all of his federal administrative remedies. The U.S. Equal Employment Opportunity Commission ("EEOC") issued a Right-To-Sue letter on June 27,

2023, as to Defendant APPS, AEPS, PARAGON and on June 29, 2023, as to Defendant CHENEGA. On July 28, 2023, Defendant NASA issued a final decision and a right to file a civil action in Federal District Court.

## **FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION**

### *Plaintiff Gazaway Commences His Career at Defendant NASA's Moffett Field*

24.25.  On February 1, 1994, Plaintiff Gazaway was hired as a Firefighter by a predecessor of employer Fiore and a predecessor of joint employer Defendants NASA, APPSPARAGON, and CHENEGA.  He worked at Defendant NASA's Ames Research Center Fire Department at Moffett Field in Mountain View, California. He was promoted approximately five times over his career. In onr around 2001, he was promoted to Battalion Chief ("BC").  In or around 2020, Plaintiff's Gazaway salary was approximately $190,578.80 with health plan benefits of $13,220 and other ancillary benefits.

25.26.  Plaintiff Gazaway is African American, a Messianic Christian, and as of the date of his wrongful termination, 53 years of age.

26.27.  Throughout his career, Plaintiff Gazaway had stellar performance, and he was praised for his fire safety knowledge. In fact, he was featured on the show "Myth Busters" on the Discovery Channel as a Safety Officer and Consultant representing Defendant NASA.

### *Plaintiff Wilson Commences His Career at Defendant NASA's Moffett Field*

27.28.  On or around February 1, 1994, Plaintiff Wilson was hired as a Firefighter by a predecessor of employer Fiore and a predecessor of joint employer Defendants NASA, APPS PARAGON, and CHENEGA.  He worked at Defendant NASA's Ames Research Center Fire Department at Moffett Field in Mountain View, California. In or around 1999, Plaintiff Wilson was promoted to Battalion Chief ("BC"). He had several pay increases with his final salary being approximately $190,578.80 plus health plan benefits (approx. $13,220) and other ancillary benefits.

28.29.  Plaintiff Wilson was 53 years old at the time of his wrongful termination.

1    29.30.  Plaintiff's performance was stellar, and he was also praised for his fire safety

2  knowledge.

3    ***Plaintiffs Gazaway and Wilson's Over 28 Year Careers at NASA's Mofett Field and***
4    ***Employed Jointly by NASA, APPS, and CHENEGA***

5    30.31.  In 2009, Plaintiffs Gazaway and Wilson went back to school and earned associate

6  degrees in business and general studies at the University of Phoenix.  This allowed them to be

7  compliant with the requirements of their Defendant employers and joint employers.  They were

8  given ample time to complete this requirement and were not fired while obtaining their AA

9  degrees. This educational requirement was subsidized by Defendant NASA.

10    31.32.  Fiore with Defendants' joint employers Defendants NASA, APPS, PARAGON, and

11  CHENEGA required Plaintiffs to receive annual training, pre-employment certifications, and

12  provided daily on-the-job training.  Plaintiffs had ensured compliance, safety, and prevention

13  continuously for military families on base housing, in daycare centers, the 129th Air National

14  Guard, various military and civilian aircraft, and surrounding communities – all while enduring

15  multiple contract changes, government shutdowns, policy shifts, national emergencies, terrorism,

16  COVID-19, and worldwide conflicts.  They also intimately knew how Defendant NASA worked.

17    32.33.  Fiore with Defendant joint employers NASA, APPSPARAGON, and CHENEGA

18  had control over when, where, and how Plaintiffs Gazaway and Wilson performed their job duties.

19  Defendant NASA furnished the fire trucks, uniforms, office space, premises (Moffett Field), and

20  any and all equipment required to perform Plaintiffs' job duties.  Since on or around February 1,

21  1994, Plaintiffs performed all their job duties on NASA's premises at Moffett Field.

22    33.34.  Fiore along with Defendants' joint employers Defendants NASA, APPS

23  PARAGON, and CHENEGA had the right and often did assign additional projects to Plaintiffs.

24  Many of these assignments from joint employers NASA, APPS PARAGON, and CHENEGA did

25  not require a high level of expertise. Defendants set all of Plaintiffs' hours via contracts.  At all

26  times herein, Plaintiffs were salaried employees not paid for performing a particular job. Plaintiffs

27  never hired or paid assistants.

28

35.     Fiore along with Defendants NASA, APPS, and CHENEGA and individuals Lynn Bala, Keith Suida, Shane Reinhart (APPS Prime Contract Manager), Rick Anderson (CHENEGA Prime Contract Manager) all negotiated the terms, conditions, and privileges of Plaintiffs' employment agreement called the NASA Fire Services Contract ("NFSC"). Likewise, Defendants controlled any changes, modifications, accommodations, or additional time to comply with the requirements set forth in the NFSC.

36.     Fiore along with Defendants NASA, APPS, and CHENEGA and individuals Bala, Suida, Aderson, and Reinhart, all negotiated the terms, conditions, and privileges of Plaintiffs performance work statements and annexes.

37.     Fiore along with Defendants NASA, APPS, and CHENEGA and individuals Lynn Bala, Keith Suida, Shane Reinhart (APPS Prime Contract Manager), controlled the terms, conditions, and privileges of Plaintiffs' employment including but not limited to their hiring, shift changes, continued employment, termination, educational changes, educational waivers, and other ongoing employment issues.

38.     Plaintiffs met with Defendant APPS management including Mr. Reinhart regarding their employment generally as well as their fear of and complaint about their potential termination. #

39.     #Plaintiffs met with Defendants NASA, APPS, and CHENEGA from commencing the NFSC, throughout the duration of the contract, on various employment issues, and upon transition to a new contract.

40.     Often daily, at all incident scenes Plaintiffs reported directly to NASA and APPS management and organized their plan(s) of action. Plaintiffs often reported to Reinhart of APPS. NASA, including NASA's Fire Marshall, and APPS, all had oversight and ultimate authority over all incident scenes and emergencies.

41.     During meetings there were welcome matts used which included the names of officials at NASA and APPS.

42.     Plaintiffs were required to inform NASA's Fire Chief for every single call they responded to and also give notice to APPS. These calls were made 24 hours a day based on Plaintiffs respective shifts.

43.     APPS compliance officer or manager had daily oversight over any and all equipment, trucks, tools, and materials used in performing their job duties and responding to emergencies. Plaintiffs reported to APPS compliance manager regularly to ensure all materials functioning and were up to the necessary standards. The compliance officer also had oversight and reviewed Plaintiffs schedules. Said compliance officer regularly conducted site visits at Moffett Field.

34.44.   In addition to satellite assets, Defendant NASA operates a fleet of aircraft and airborne sensors that contribute to risk reduction, response, and recovery from wildland fires. Services under the Defendant NASA's Fire Services Contract ("NFSC ") include fire operations and firefighting; emergency medical services, including fire protection; fire prevention inspection program; fire services training; fire investigations; hazardous materials response; technical rope and confined space rescue.  Defendants APPS PARAGON and CHENEGA also are in the busines of fire, security, and protective services.

35.45.   Defendants provided Plaintiffs with a multitude of benefits both financial and health—wise.   At all times herein, Fiore and joint employers Defendants NASA, APPS, PARAGON, and CHENEGA could discharge Plaintiffs Gazaway and Wilson.  On information, belief, and daily practice, Plaintiffs Gazaway and Wilson were employees of all Defendants.

36.46.   During their over 28 years working together, Plaintiffs Gazaway and Wilson became great colleagues and friends.  They were proud to serve as BCs firefighters preventing fires, responding to emergencies, and risking their lives to protect others.  They believed they were both assets to the Defendants' continued commitment to excellence.  Their dedication to the successful and peaceful endeavors of this nation never wavered. They helped building from the ground up the Fire Department at Moffett Field.

***Defendants Make Ongoing Discriminatory Comments Against Plaintiffs***

37.47.  In approximately 2018-2019, William ("Bill") Bonner was hired by employer Fiore as a BC (management). Early in his employment, Mr. Bonner accused Plaintiff Gazaway of leaving pubic hair in the sink after a shift change.  Plaintiff Gazaway attempted to explain that the hair in the sink was his head hair, and that African American hair comes in many textures and curl patterns, that the hair in the sink was certainly not pubic hair. In spite of this explanation, a humiliating investigation was launched, and Plaintiff Gazaway was forced to sign disciplinary documentation ratified and approved by management of Defendants NASA and APPS.  As a result of this discriminatory investigation by two white men (Mr. Bonner and John Poell), Plaintiff Gazaway was forced to change his preferred shift, which he had held for over 15 years.  Mr. Bonner was subsequently promoted to Fire Chief. Mr. Gazaway was humiliated by this incident.

38.48.  Commencing in or about March 2020, Defendant Keith Siuda (Manager, Fire Protection POC at NASA)[1] made remarks regarding Plaintiff's Gazaway's age, including "you're looking more and more gray;" "you're sure looking old;" "you're looking older than me;" and "look at all that gray."  These comments made Plaintiff Gazaway uncomfortable, and he asked Defendant Siuda to stop making them.  Defendant Siuda continued to make these comments on his frequent visits to Defendant NASA's station.  At all times herein, Siuda was acting as a managing agent of Defendant NASA.

39.49.  During this same time, Defendant Siuda, as well as others, made comments to Plaintiff Wilson about his's age, including that he was "being too old" and called him "old man." There were jokes about Plaintiff's Wilson's ability to perform physical tasks.  Specifically, during the annual physical agility testing, there were jokes about whether he would pass that year. Plaintiff Wilson became increasingly uncomfortable with the frequency of these comments and jokes.

40.50.  During that same time, Defendant SiudaIUDA also made comments about Plaintiff Gazaway's beard.  As a Messianic Christian, Plaintiff had an approved religious accommodation with Title VII of the Civil Rights Act of 1964 for his beard.

---

[1] Defendant Siuda is presently NASA's Fire Marshal.

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

41.51.  In or around 2020, OSHA sent five (5) inspectors to the station to evaluate self-regulation.  Defendant Siuda was the NASA escort to the OSHA evaluators.  Defendant Nasa was the on-duty BC.  During the inspection, an African American woman asked Plaintiff Gazaway several specific questions regarding their operations.  He answered her questions knowledgeably and professionally. She then requested a demonstration.  Defendant Siuda approved.  Plaintiff Gazaway took her out for a 10-minute demonstration.  After additional questions, the inspector was satisfied and cut the inspection shorter than anticipated.  They passed the inspection with flying colors.

42.52.  After the inspection, Defendant Siuda made two inappropriate comments about Plaintiff Gazaway.  He suggested Plaintiff Gazaway's success was due to his "magic beard." Plaintiff Gazaway was insulted by this belittling comment about his religion and religious beard. Mr. Siuda further stated that Plaintiff Gazaway's success was because "she liked him,", implying that the inspector showed him favoritism because she was attracted to his "magic beard" and gave him preference because of his race (African American), rather than his professionalism, experience, and success in competently addressing all of her questions and concerns as a knowledgeable fire officer.

43.53.  In or around May or June of 2022, Mr. Stacey Ettel (Vice President of Fiore) came as part of a corporate visit to the fire station at NASA's Mofett Field.  After some time in discussion, he turned to Plaintiff Gazaway and asked in a sarcastic way "What's up with the beard?"  This was yet another discriminatory comment and interaction in the workplace.

44.54.  Defendant Siuda was regularly the Santa for Defendant NASA's Christmas party at Defendant NASA's Moffett field.  Plaintiff Gazaway felt pressured to participate, even though it was contrary to his religious beliefs, and felt that if he did not, Defendant Siuda would retaliate against him in some way.  At all times herein, Defendants NASA, Chenega CHENEGA and APPS and their management participated in said holiday and other celebrations.

### *Plaintiffs[2] Seek Union Membership*

45.55.  In or around October 2021, Plaintiffs Gazaway and Wilson sought to join a union for firefighters, Union I-79.  They felt they were being treated unfairly by Fiore and Defendants

1   NASA, CHENEGA and APPS PARAGON in regard to their compensation.  Plaintiffs believed

2   they were misclassified, not promoted, not able to use their available leave (vacation and sick

3   leave), and the discrimination (age, race, and religion) that was ongoing for both of them. was not

4   being addressed. They felt a union would offer the protections they required.  Employer Fiore and

5   joint employer Defendants NASA, CHENEGA and APPS PARAGON opposed their union

6   membership.  Plaintiffs' union membership was denied. At all times herein, management of

7   NASA, CHENEGA, ANDand APPS was interrelated and shared common management between

8   and among Suida, Bala, Anderson, and Reinhart.  Employer Fiore and joint employers NASA,

9   CHENEGA and APPS had a common ownership and/or financial control over Moffett Field and

10  fire protections services rendered on a daily basis.

11      46.56.  When the Union I-79 membership was denied, Plaintiffs Gazaway and Wilson

12  started to form their own BC union.  By August 2022, the Union Charter was adopted as

13  International Association of Fire Fighters ("IAFF") I100, and they awaited only approval from the

14  National Labor Relations Board ("NLRB").  Plaintiffs were terminated before the NLRB certified

15  the Union.

16      47.57.  In 2021, Defendants CHENEGA and PARAGON wasere awarded the

17  DEFENDANT's Defendant NASA's contract.  However, throughout 2021, APPS continued to

18  oversee the contract until on or around September 2022. As such, both Defendants APPS and

19  CHENEGAthey reviewed and submitted a proposals to comply with the standards and terms for

20  the contract period months in advance of their submission.  Moreover, both Defendants APPS and

21  CHENEGA knew and were given notice of the contract requirements and which of their employees

22  qualified under the contract or would require additional education, training or were out of

23  compliance.

24      48.58.  Unbeknownst to Plaintiffs, a new educational requirement was included in the new

25  contract by Defendant NASA.  The new contract required BC positions to have an AA in Fire

26  Science, rather than the AA in any subject, and unlike other positions, there was no work

27  experience equivalency offered in lieu of this specific degree.  The contract required all BCs to

28  meet this educational standard by October 1, 2022.   BCs were the *only* position required to have

a specific college degree, and *only* BCs at Ames Research Center required the degree, thus the contract change targeted and impacted only Plaintiffs.  Plaintiff Gazaway and Wilson were targeted by this requirement.

49.59.  Employer Fiore, joint employer Defendants NASA, CHENEGA and APPS PARAGON and individual Defendants Siuda, and Bala, Reinhart, and Ansderson all failed to tell Plaintiffs of the changed educational requirement until August 18, 2022, less than 45 days in advance of the deadline to meet the requirement.  This was intentional conduct by said Defendants to prevent Plaintiffs' Gazaway and Wilson from meeting the new educational requirement.

50.60.  Undeterred, Plaintiffs Gazaway and Wilson submitted documentation from two (2) educational institutions which stated that they had exceeded the requirements for the required degrees, but would not be able to be conferred with the degree within the short time-frame provided in the new contract.

51.61.  Plaintiffs requested a reasonable accommodation of time to meet the requirements, as little as ninety (90) days.  In all previous contracts with Defendants NASA, CHENEGA and APPS PARAGON, Plaintiffs Gazaway and Wilson had been given ample time to comply with any new or additional requirements.  Plaintiffs were given up to as long as eighteen (18) months to ensure compliance and avoid undue hardships.  All other positions on the new fire contract were given time to meet any educational deficiencies.  Those that were not provided the extra time specifically in the contract were covered under the Union I-79 agreement requiring a minimum of six (6) months' grace period to attempt to meet any new requirements.

52.62.  Employer Fiore and Defendants NASA, CHENEGA and APPS PARAGON denied this request based on communication from "the Government" that stated that they would not grant an exception to the requirement for a BC to have an AS Degree in Fire Science effective October 1, 2022.  No exceptions.  They further rejected the documentation from Oregon University stating Plaintiffs had surpassed the educational requirement of an AA degree in Fire Science as required.  Defendants Siuda, and Bala, Anderson, and Reinhart, requested, approved, and ratified this denial.

53.63.  Plaintiffs Gazaway and Wilson made legally-protected complaintsed multiple times to Defendants about their discriminatory and retaliatory treatment based on age, race, and other

protected categories. Once their job was in jeopardy, Plaintiffs made legally-protected complaints and/or "protected disclosures" in-person and in-writing including but not limited to: Congresswoman Anna Eshoo; Fiore, Defendant NASA, APPS, and CHENGA'Ss management and Defendant NASA's internal Equal Employment Opportunity Office (all were authorized audiences pursuant to Defendant NASA's regulations).

64.    On or around August 2022, Plaintiffs also spoke with Rick Anderson (Contract Manager for ChenegaCHENEGA). They discussed the educational waiver and their employment. Plaintiffs further complained to Anderson that they were being mistreated.

65.    Employer Fiore and joint employer Defendants NASA, CHENEGA and APPSPARAGON notified Plaintiffs that because they did not meet the educational requirement, their employment was being terminated effective September 30, 2022, thus ending Plaintiffs' Gazaway and Wilson's 28 years of service (each) at NASA's Moffet Field. Defendants Siuda, and Bala, Anderson, Reinhart, requested, approved, and ratified this discriminatory, retaliatory, and wrongful termination.

54.66.  Unlike Plaintiffs, several employees remain employed under NFSC at Moffett Field and elsewhere out of compliance with the terms of said contract. Siuda, Bala, Anderson, Reinhart requested, approved, and ratified this discriminatory, retaliatory, and wrongful termination.

**FIRST CAUSE OF ACTION**

**AGE DISCRIMINATION FEHA**
(As to ALL PLAINTIFFS,
Against ALL DEFENDANT CHENEGA and APPSand DOES 1 through 50)
(California Government Code §§ 12940(a), *et seq. and* 12941and ADEA, 29 U.S.C. § 623))

55.67.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

56.68.  Plaintiffs were at all times material hereto employees covered by FEHA.

57.69. Employer Fiore and joint employer Defendants NASA, CHENEGA and APPSPARAGON were at all times material hereto an joint employer with Fiore within the meaning of the FEHA, and as such, barred from discriminating in employment decisions on the basis of age. At all times herein, Defendants controlled all aspects of Plaintiffs' employment

1   including but not limited to hiring, maintaining employment, discipline, supervision, and control

2   of their day-to-day activities.

3       58.70.  Pursuant to Government Code § 12940(a), it is unlawful for an employer to

4   discriminate against an employee because of the employee's age. Pursuant to 29 U.S.C. § 623, it

5   is unlawful for an employer to discharge any individual or otherwise discriminate against any

6   individual because of such individual's age.

7       59.71.  As employees over the age of forty (40), Plaintiffs are members of a protected class.

8   Defendants discriminated, targeted, and wrongfully terminated Plaintiffs on the basis of their age

9   in violation of the California FEHA and the ADEA including but not limited to making stray ageist

10  remarks, commenting on their age, gray hair, and fitness for duty. Further, they made job and

11  education requirements that only impacted Plaintiffs.  They also retaliated against Plaintiffs for

12  their legally-protected complaint of discrimination and unfair treatment within less than 90 days

13  (SB 497) because of their age.

14      60.72.  Plaintiffs were subjected to adverse employment actions including but not limited

15  to retaliatory and wrongful termination because of their age. Plaintiffs complained about their

16  discriminatory and wrongful termination based on age, race, and other protected categories.

17  Defendants failed to conduct aNo good faith and timely investigation was conducted.

18      61.73.  Defendants' discriminatory actions against Plaintiffs, as alleged above, constituted

19  unlawful discrimination in employment on account of Plaintiffs' age, in violation of FEHA and

20  ADEA. Anderson (CHENEGA management) and Reinhart (APPS management) were aware of,

21  approved, and ratified this discrimination.

22      62.74.  That Defendants' conduct was the substantial factor in causing Plaintiffs' harm.

23      63.75.  As a direct and proximate result of the unlawful conduct of discrimination by

24  Defendants, Plaintiffs have suffered and continue to suffer damages including but not limited to

25  loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiffs would

26  have received had they not been terminated by Defendants.

27      64.76.  As a further direct and proximate result of the unlawful conduct and discrimination

28  by Defendants, Plaintiffs have suffered and continue to suffer emotional distress, embarrassment,

humiliation, mental anguish, and anxiety, all to their damage in an amount in excess of jurisdictional requirements and according to proof.

65.77.  Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiffs' rights.

78.    Therefore, in addition to compensatory damages, Plaintiffs are entitled to recover attorney's fees, liquidated and punitive damages from Defendants in an amount according to proof.

## SECOND CAUSE OF ACTION

### AGE DISCRIMINATION ADEA
(As to ALL PLAINTIFFS, Against DEFENDANTS NASA CHENGA, APPS,)
(ADEA, 29 U.S.C. § 623))

79.    Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

80.    Plaintiffs were at all time material hereto employees covered by ADEA.

81.    Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the ADEA, and as such, barred from discriminating in employment decisions on the basis of age. At all times herein, Defendants controlled all aspects of Plaintiffs' employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

82.    Pursuant to 29 U.S.C. § 623, it is unlawful for an employer to discharge any individual or otherwise discriminate against any individual because of such individual's age.

83.    Fiore and Defendants NASA, CHENEGA, and APPS wrongfully terminated Plaintiffs.

84.    As employees over the age of forty (40), Plaintiffs are members of a protected class. Defendants discriminated, targeted, and wrongfully terminated Plaintiffs on the basis of their age in violation of the ADEA including but not limited to making stray ageist remarks, commenting on their age, gray hair, and fitness for duty. Further, they made job and education requirements that targeted and only impacted Plaintiffs.

85.    Defendants wrongfully terminated Plaintiffs because of their age.

86.     Plaintiffs were subjected to adverse employment actions including but not limited to retaliatory and wrongful termination because of their age. Plaintiffs made legally-protected complaints about their discriminatory and wrongful termination based on age, race, and other protected categories.  No good faith, timely investigation was conducted.

87.     Defendants' discriminatory actions against Plaintiffs, as alleged above, constituted unlawful discrimination in employment on account of Plaintiffs' age, in violation of the ADEA. NASA management Siuda, and Bala, Anderson (CHENEGA management) and Reinhart (APPS management) were aware of, approved, and ratified this discrimination.

88.     That Defendants' conduct was the substantial factor in causing Plaintiffs' harm.

89.     As a direct and proximate result of the unlawful conduct of discrimination by Defendants, Plaintiffs have suffered and continue to suffer damages including but not limited to loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiffs would have received had they not been terminated by Defendants.

90.     As a further direct and proximate result of the unlawful conduct and discrimination by Defendants, Plaintiffs have suffered and continue to suffer emotional distress, embarrassment, humiliation, mental anguish, and anxiety, all to their damage in an amount in excess of jurisdictional requirements and according to proof.

91.     ~~/~~Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiffs' rights.

92.     Therefore, in addition to compensatory damages, Plaintiffs are entitled to recover attorney's fees, liquidated and punitive damages from Defendants in an amount according to proof.

### THIRD~~SECOND~~ CAUSE OF ACTION

RACIAL DISCRIMINATION (INCLUDING CROWN ACT VIOLATIONS)
(As to PLAINTIFF GAZAWAY,
Against ~~ALL~~ DEFENDANT~~S~~ CHENEGA and APPS ~~EMPLOYERS and DOES 1 through 50~~)
(California Government Code §§ 12940(a), *et seq.* ~~and Title VII, 42 U.S.C. § 2000e-2~~)

~~66.~~   Plaintiff Gazaway incorporates all preceding paragraphs as though fully set forth herein.

93.

94.     Under Government Code section 129040(a), it is an unlawful employment practice for an employer to terminate a person, or to discriminate against a person in the terms, conditions, or privileges of employment on the basis of, among other things, their race and hair (Creating a Respectful and Open Workplace for Natural Hair, the "CROWN Act" of 2019 (SB 188) (Government Code section 12926(x))).

1.95.   Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the FEHA, and as such, barred from discriminating in employment decisions on the basis of race. At all times herein, Defendants controlled all aspects of Plaintiff's employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

2.      Pursuant to 42 U.S.C. § 2000e-2, it is unlawful for an employer to discharge any individual or otherwise discriminate against any individual because of such individual's race.

96.     As an African American, Plaintiff Gazaway is a member of a protected class. Defendants discriminated against Plaintiff Gazaway on the basis of his race including retaliatorily and wrongfully terminating him in violation of the California FEHA including but not limited to disciplining him, changing his shift, failing to promote him, making racist stray remarks, and commenting on his hair. Defendants Anderson and Reinhart, were aware of, approved, and ratified this discrimination.

#

67.97.  Plaintiff's race and hair was the substantial motivating reason for Defendants' mistreatment of him. Ultimately, Plaintiff Gazaway was terminated from his job once he complained about the ongoing racial mistreatment.  No good faith, timely investigation was conducted.

68.     Plaintiff was harmed; and,

69.98.  That Defendants' conduct was a substantial factor in causing Plaintiff's harm.

70.99.  As a direct and proximate result of the unlawful conduct and discrimination by Defendants, Plaintiff has suffered and continues to suffer emotional distress, embarrassment,

humiliation, mental anguish, anxiety, loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiff would have received had he not been terminated by Defendant. Damages are in an amount in excess of jurisdictional requirements and according to proof.

~~71.~~100. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. Therefore, in addition to compensatory damages, attorney's fees, liquidated damages, Plaintiff is entitled to recover punitive damages from Defendant in an amount according to proof.

101. Plaintiff has incurred and continues to incur attorney's~~'~~ fees and legal expenses and is also entitled to recover said costs and fees in an amount according to proof at the time of trial pursuant to Government Code section 12965(b).

~~3. is~~

~~Plaintiff Gazaway incorporates all preceding paragraphs as though fully set forth herein.~~

~~4. Under Government Code section 129040(a), it is an unlawful employment practice for an employer to terminate a person, or to discriminate against a person in the terms, conditions, or privileges of employment on the basis of, among other things, their religious creed. Under Title VII, Title VII, 42 U.S.C. § 2000e et seq. makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…religion..."~~
~~Defendants discriminated against Plaintiff Gazaway on the basis of his religious creed and observations in violation of the California FEHA including but not limiting to making stray remarks about his religious observations in maintaining his beard as well as pressuring PLAINTIFF to participate in activities which contradicted PLAINTIFF's religious beliefs.~~**FOURTH CAUSE OF ACTION**

**RACIAL DISCRIMINATION**
(As to PLAINTIFF GAZAWAY, Against DEFENDANTS NASA, CHENEGA and APPS
(Title VII, 42 U.S.C. § 2000e-2)

102. Plaintiff Gazaway incorporates all preceding paragraphs as though fully set forth herein.

103. Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the Title VII, and as such, barred from discriminating in employment decisions on the basis of race. At all times herein, Defendants controlled all aspects of Plaintiff's employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of ~~their~~his day-to-day activities.

104.    Plaintiff Gazaway's work shift was changed, and he was wrongfully terminated by Defendants. Ongoing discriminatory comments were made about his race. Siuda, Bala, Anderson, Reinhart, were aware of, approved, and ratified this discrimination.

105.    Plaintiff's race and hair was were the substantial motivating reasons for Defendants' mistreatment of him. Ultimately, Plaintiff Gazaway was terminated from his job once he made a legally-protected complaint about the ongoing racial mistreatment.  Defendants failed to conduct a good faith and timely investigation.

106.    The Defendants failed to promote Plaintiff Gazaway, changed his shift, and wrongfully terminated Plaintiff Gazawayhim because of his race.

107.    Plaintiff was at all times herein qualified for his position as a BC at Moffett Field. He held the same position for over 21 years. Similarly situated individuals outside of Plaintiff Gazaway's race were not terminated, were given accommodations, were allowed to keep their jobs, and requirements were waived for them. As such, they were treated more favorabley than Plaintiffs.

5.108. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff Gazaway, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff Gazaway's rights. Therefore, in addition to compensatory damages, attorney's fees, liquidated damages, Plaintiff Gazaway is entitled to recover punitive damages from Defendant in an amount according to proof.

## FIFTHTHIRD CAUSE OF ACTION

**RELIGIOUS DISCRIMINATION AND HARASSMENT IN VIOLATION OF FEHA**
(As to PLAINTIFF GAZAWAY, Against CHENEGA ALL DEFENDANT EMPLOYERS and APPSDOES 1through 50)
(California Labor Code § 12940(a), *et seq.*) and Title VII, 42 U.S.C. § 2000e *et seq.*)

109.    Plaintiff Gazaway incorporates all preceding paragraphs as though fully set forth herein.

#

6.

110.    Under Government Code section 129040(a), it is an unlawful employment practice for an employer to terminate a person, or to discriminate against a person in the terms, conditions,

1   or privileges of employment on the basis of, among other things, their religious creed. ~~Under Title~~

2   ~~VII, Title VII, 42 U.S.C. § 2000e et seq. makes it "an unlawful employment practice for an~~

3   ~~employer . . . to discriminate against any individual with respect to his compensation, terms,~~

4   ~~conditions, or privileges of employment, because of such individual's…religion..."~~

5   ~~7.~~111. Employer Fiore and joint employer Defendants ~~NASA,~~ CHENEGA and APPS

6   were at all times material hereto a joint employer within the meaning of the FEHA, and as such,

7   barred from discriminating in employment decisions on the basis of religious creed. At all times

8   herein, Defendants controlled all aspects of Plaintiff's employment including but not limited to

9   hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

10   ~~8.~~112. Defendants discriminated against Plaintiff Gazaway on the basis of his religious

11   creed (Messianic Christian) and observations in violation of the California FEHA ~~and Title VII~~

12   including but not limit~~inged~~ to making stray remarks about his religious observations in

13   maintaining his beard as well as pressuring Plaintiff to participate in activities, which contradicted

14   Plaintiff's religious beliefs including but not limited to Christmas. Plaintiff had a religious

15   accommodation under Title VII of the Civil Rights Act of 1964 for his beard.

16   ~~9.~~113. Plaintiff's religious creed was the substantial motivating reason for Defendants'

17   mistreatment of him.  Ultimately, Plaintiff Gazaway was terminated from his job once he

18   complained about the ongoing mistreatment. Defendants failed to do a good faith and timely

19   investigation into his complaints.  Anderson and Reinhart were aware of, approved, and ratified

20   this discrimination.

21   ~~10.~~114.As a direct and proximate result of the unlawful conduct and discrimination by

22   Defendants, Plaintiff has suffered and continues to suffer emotional distress, embarrassment,

23   humiliation, mental anguish, anxiety, loss of wages, salary, benefits, and other employment and

24   retirement benefits that Plaintiff would have received had he not been terminated by Defendant.

25   Damages are in an amount in excess of jurisdictional requirements and according to proof.

26   ~~11.~~115.Defendants committed the acts alleged herein maliciously, fraudulently, and

27   oppressively, with the wrongful intention of injuring Plaintiff, with an improper and evil motive

28   amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. Therefore, in

1  addition to compensatory damages, Plaintiff is entitled to recover punitive damages from

2  Defendant in an amount according to proof.

3      116.   Plaintiff has incurred and continues to incur attorney's' fees and legal expenses and

4  is also entitled to recover said costs and fees in an amount according to proof at the time of trial

5  pursuant to Government Code section 12965(b).

6  <center>**SIXTH CAUSE OF ACTION**</center>

7  <center>**RELIGIOUS DISCRIMINATION AND HARASSMENT IN VIOLATION OF TITLE VII**</center>

8  <center>(As to PLAINTIFF GAZAWAY,<br>Against ALL DEFENDANTS NASA, CHENEGA ANDand APPS)</center>

9  <center>(Title VII, 42 U.S.C. § 2000e *et seq.*)</center>

10      117.   Plaintiff Gazaway incorporates all preceding paragraphs as though fully set forth

11  herein.

12      118.   Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS

13  were at all times material hereto a joint employer within the meaning of Title VII, and as such,

14  barred from discriminating in employment decisions on the basis of religious creed. At all times

15  herein, Defendants controlled all aspects of Plaintiff's employment including but not limited to

16  hiring, maintaining employment, discipline, supervision, and control of theirhis day-to-day

17  activities.

18      119.   Plaintiff Gazaway's work shift was changed, and he was wrongfully terminated by

19  Defendants. Ongoing discriminatory comments were made about his religious beliefs. Siuda, Bala,

20  Anderson, Reinhart, were aware of, approved, and ratified this discrimination.

21      120.   Plaintiff's race and hair was the substantial motivating reason for Defendants'

22  mistreatment of him. Ultimately, Plaintiff Gazaway was terminated from his job once he made a

23  legally-protected complaint about the ongoing religious mistreatment.  Defendants failed to

24  conduct a good faith and timely investigation.

25      121.   The Defendants failed to promote Plaintiff Gazaway, changed his shift, and

26  wrongfully terminated Plaintiff Gazaway him because of his religion.

27      122.   Plaintiff was at all times herein qualified for his position as a BC at Moffett Field.

28  He held the same position for over 21 years. Similarly situated individuals outside of Plaintiff

Gazaway's religion were not terminated, were given accommodations, were allowed to keep their jobs, and requirements were waived for them. As such, they were treated more favorablye than Plaintiff Gazaway.

123.   Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. Therefore, in addition to compensatory damages, Plaintiff is entitled to recover punitive damages from Defendant in an amount according to proof.

### SEVENTHFOURTH CAUSE OF ACTION

**ASSOCIATION DISCRIMINATION (RACE AND RELIGION)**
(As to PLAINTIFF WILSON, Against ALL DEFENDANTS CHENEGA ANDand APPSEMPLOYERS) and DOES 1 through 50)
(California Government Code §§ 12940(a), 12940(o), and 12940(i), (*et seq.*)

12.124.Plaintiff Wilson incorporates all preceding paragraphs as though fully set forth herein.

125.   Under Government Code sections 12940(a), 12940(o), and 12940(i), it is an unlawful employment practice for an employer to terminate a person, or to discriminate against a person in the terms, conditions, or privileges of employment on the basis of, among other things, their racial and religious associations.

13.126.Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the FEHA, and as such, barred from discriminating in employment decisions on the basis of association. At all times herein, Defendants controlled all aspects of Plaintiff's employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

14.127.As a friend, associate, and close colleague of Plaintiff Gazaway, an African American and a Messianic Christian, Plaintiff Wilson is a member of a protected class. Defendants discriminated against Plaintiff Wilson on the basis of his association with Plaintiff Gazaway in violation of the California FEHA including but not limited to retaliating against him and terminating his employment.

15.128.Plaintiff Gazaway's race and religion was the substantial motivating reason for Defendants' mistreatment of Plaintiff Wilson. Ultimately, Plaintiff Wilson was terminated from his job once he supported Plaintiff Gazaway's complaint about the ongoing racial and religious mistreatment of Plaintiff Gazaway, . As well asand made his own complaint about his discriminatory and retaliatory treatment.  No good faith and timely investigation was conducted. SuidaDefendants SIUDA, Bala, Anderson, and Reinhartand BALA were aware of, approved, and ratified this discrimination.

16.     Plaintiff Wilson was harmed by Defendants' actions;; and,

17.129.That Defendants' cConduct was a substantial factor in causing his harm.

18.130.As a direct and proximate result of the unlawful conduct and discrimination by Defendants, Plaintiff Wilson has suffered and continues to suffer emotional distress, embarrassment, humiliation, mental anguish, anxiety, loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiff would have received had he not been terminated by Defendant. Damages are in an amount in excess of jurisdictional requirements and according to proof.

19.131.Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. Therefore, in addition to compensatory damages, Plaintiff is entitled to recover punitive damages from Defendant in an amount according to proof.

20.132.Plaintiff has incurred and continues to incur attorney's's fees and legal expenses and is also entitled to recover said costs and fees in an amount according to proof at the time of trial pursuant to Government Code section 12965(b).

### EIGHTFIFTH CAUSE OF ACTION

**RETALIATION**
(As to ALL PLAINTIFFS, Against ALL DEFENDANTS CHENEGA and APPSDOES 1 through 50)
(California Government Code §§ 12940(h), 12940(n), 12940(m) *et seq.*, Labor Code § 1102.5 and SB 497) and 42 U.S.C. § 2000e-3(a))

-25-

72.     Plaintiffs Gazaway and Wilson incorporate all preceding paragraphs as though fully set forth herein.

133.

21.134.Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS were at all times material hereto a joint employer within the meaning of FEHA, and as such, barred from retaliating against employees for unionizing, making legally-protected complaints which consisted of whistleblower activity. At all times herein, Defendants controlled all aspects of Plaintiffs' employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.At all times relevant to this Complaint, Plaintiffs were employees of Defendants and covered by the FEHA.

22.135.California Government Code section §§ 12940(h), 12940(n), 12940(m) *et seq.* further provides that it is an unlawful employment practice "[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."

23.     Title VII makes it an unlawful employment practice for a person covered by the Act to discriminate against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

24.136.As alleged above, Plaintiffs engaged in more than one protected activity during their employment with Defendant joint employers.  Specifically, Plaintiffs complained about their mistreatment by Defendants to Defendants, complained about the discriminatory AA degree in fire science job requirement, attempted to form a collective bargaining unit for BCs Battalion Chiefs and union membership and association (29 U.S.C. §§ 151-169 and the National Labor Relations Act ("NLRA"). Plaintiffs also complained about retaliation against them after their complaints. These are also protective activity under federal law specifically, Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

137.   Plaintiffs disclosed that they were being not allowed to take their sick leave and being treated unfairly as to wages. Plaintiffs made legally-protected complaints and/or "protected disclosures" in-person and in-writing to, including but not limited to: Congresswoman Anna Eshoo; Fiore, Defendant NASA, APPS, and CHENGA'S management and Defendant NASA's internal Equal Employment Opportunity Office (all were authorized audiences pursuant to Defendant NASA's regulations). Defendants ~~NASA, Chenega~~CHENEGA and APPS ~~all~~ had authority over Plaintiffs and could investigate, discover, or correct these legal violations and ~~non compliance~~noncompliance with laws.

~~25.~~138. Plaintiffs are informed and believe and thereon allege that because of their legally-protected complaints and attempting to form a collective bargaining unit for BCs ~~Battalion Chiefs~~ (i.e., protected conduct), Defendants subjected Plaintiffs to unwanted~~,~~ retaliatory conduct.  This conduct included terminating the employment of Plaintiffs. Plaintiffs had ~~a~~ reasonable cause to believe that the information disclosed was a violation of state, federal and other laws. ~~Defendants Siudal~~UDA, Bala,~~ Anderson~~, and Reinhart~~and BALA~~ were aware of, approved, and ratified this retaliation.

~~26.~~139. Defendants' retaliatory conduct was a substantial factor in causing Plaintiffs harm, namely that Plaintiffs were forced to suffer, among other injuries lost wages and other compensation benefits, physical and severe emotional distress, and other pecuniary loss, thus causing Plaintiffs damages in an amount according to proof at trial, in excess of the minimum for unlimited jurisdiction of this Court.  Pursuant to California Government Code section 12965(b), Plaintiffs are entitled to reasonable attorney's fees and costs of suit.

140.   Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs, and acted with an improper and evil motive amounting to malice and in conscious disregard of Plaintiffs' rights. Because the acts taken toward Plaintiffs were carried out by Defendants acting in a deliberate, cold, callous, and intentional manner in order to injure and damage Plaintiffs, they are entitled to recover punitive damages from Defendants in an amount according to proof.

## NINTH CAUSE OF ACTION

<u>RETALIATION</u>
(As to ALL PLAINTIFFS, Against DEFENDANTS NASA, CHENEGA and APPS)
(TITLE VII, 42 U.S.C. § 2000e-3(a))

141.   Plaintiffs Gazaway and Wilson incorporate all preceding paragraphs as though fully set forth herein.

142.   Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the Title VII, and as such, barred from retailing. At all times herein, Defendants controlled all aspects of Plaintiffs' employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

Title VII makes it an unlawful employment practice for a person covered by the Act to discriminate against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

143.   #

144.   Plaintiffs disclosed that they were not being ~~not~~ allowed to take their sick leave and were being treated unfairly as to wages. Plaintiffs made legally-protected complaints and/or "protected disclosures" in-person and in-writing to, including but not limited to: Congresswoman Anna Eshoo; Fiore, Defendant NASA, APPS, and CHENGA's management and Defendant NASA's internal Equal Employment Opportunity Office (all were authorized audiences pursuant to Defendant NASA's regulations). Defendants NASA, ~~Chenega~~ CHENEGA and APPS all had authority over Plaintiffs and could investigate, discover, or correct these legal violations and non-compliance with laws.

145.   Fiore and joint employer~~s DEFENDANTS~~Defendants NASA, CHENEGA ~~AND~~and APPS subjected both ~~PLAINTIFFS~~Plaintiffs to termination and Plaintiff Gazaway to a shift change.

146.   Given the close temporal proximity (less than 45 days), Plaintiff were subjected to the adverse employment action because of their protected activity (legally-protected

complaints) and unionizing. Siuda, Bala, Anderson, and Reinhart were aware of, approved, and ratified this retaliation.

27.147. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs, and acted with an improper and evil motive amounting to malice and in conscious disregard of Plaintiffs' rights. Because the acts taken toward Plaintiffs were carried out by Defendants acting in a deliberate, cold, callous, and intentional manner in order to injure and damage Plaintiffs, they are entitled to recover compensatory, liquidated and punitive damages from Defendants in an amount according to proof.

### TENSIXTH CAUSE OF ACTION

**UNION MEMBERSHIP OR ASSOCIATION RETALIATION IN VIOLATION OF THE NLRA**
(As to ALL PLAINTIFFS, Against DEFENDANTS CHENEGA AND and APPSPRAGON) and DOES 1 through 50)
(29 U(29 U.S.C. §§ 151-169))

150. Plaintiffs Gazaway and Wilson incorporate all preceding paragraphs as though fully set forth herein

148.

151. Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the National Labor Relations Act ("NLRA.") and as such, barred from discriminating in employment decisions on the basis of association. At all times herein, Defendants controlled all aspects of Plaintiffs' employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities. Plaintiffs were at all time material hereto employees of Defendants Chenega and Paragon covered by the National Labor Relations Act ("NLRA.")

149.

152. Pursuant to 29 U.S.C. §§ 151-169, it is unlawful for an employer to discriminate against an employee because of the employee's union membership or association.

Defendants were at all times material hereto an employer within the meaning of the NLRA, and as such, barred from discriminating in employment decisions on the basis of union membership or association.

150.

1  153.          Plaintiffs were engaged in protected activity, to wit, organizing a collective

2  bargaining unit for BCs Battalion Chiefs. Defendants discriminated against Plaintiffs on the basis

3  of their union membership or association in violation of the NLRA including but not limited to

4  opposing Plaintiffs' inclusion in an existing union for firefighters and terminating Plaintiffs when

5  they were on the cusp of having a collective bargaining unit for BCs Battalion Chiefs approved by

6  the NLRB. At all times herein, Defendants NASA, CHENEGA, and APPS were aware that

7  Plaintiffs were unionizing.

8  151.

9  154.          Plaintiffs were subjected to adverse employment action when they were

10  terminated in material part because of their union membership or association.

11  152.

12  155.          Defendants' discriminatory actions against Plaintiffs, as alleged above,

13  constituted unlawful discrimination in employment on account of Plaintiffs' union membership or

14  association, in violation of the NLRA.

15  153.

16  156.          As a direct and proximate result of the unlawful conduct of discrimination

17  by Defendants, Plaintiffs have suffered and continue to suffer damages including but not limited

18  to loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiffs

19  would have received had they not been terminated by Defendants.

20  154.

21  157.          As a further direct and proximate result of the unlawful conduct and

22  discrimination by Defendants, Plaintiffs have suffered and continue to suffer emotional distress,

23  embarrassment, humiliation, mental anguish, and anxiety, all to their damage in and amount in

24  excess of jurisdictional requirements and according to proof.

25  155.

26  73.          Defendants committed the acts alleged herein maliciously, fraudulently, and

27  oppressively, with the wrongful intention of injuring Plaintiffs with an improper and evil motive

28  amounting to despicable conduct, and in conscious disregard of Plaintiffs' rights.

1    156.

2    #

3

4    28.157.————Therefore, in addition to compensatory damages, Plaintiffs are entitled to

5    recover punitive damages from Defendants in an amount according to proof.

**ELEVENSEVENTH CAUSE OF ACTION**

**FAILURE TO PREVENT DISCRIMINATION, HARASSMENT,
AND RETALIATION IN VIOLATION OF FEHA**
(As to ALL PLAINTIFFS Against ALL DEFENDANTS CHENEGA ANDand APPS) and
DOES 1 through 50)
(California Government Code § 12940(k))

177.————Plaintiffs Gazaway and Wilson incorporate all preceding paragraphs as though fully set forth herein.

158.

178.————Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the FEHA, and as such, barred from discriminating in employment decisions and engaging in discrimination, harassment, and retaliation. At all times herein, Defendants controlled all aspects of Plaintiffs' employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.Plaintiffs were employees of Defendants.

159.

179.————During Plaintiff's' employment Defendant failed to prevent the above-referenced actions of harassment, discrimination, and retaliation including but not limited to ageist and racial comments, and opposition to their union activities, retaliation for legally-protected complaintscomplaining about their unfair treatment, and Plaintiffs were terminated without the ability to address new educational requirements after complaints about their mistreatment and before the approval of the formation of a collective bargaining unit for BCs attalion Chiefs in violation of California Government Code § 12940(k).

160.

180. Defendants failed to take all reasonable steps to prevent said harassment, discrimination, and retaliation. Further Defendants failure to undertake a prompt and adequate investigation. SuidaDefendants SIUDA, Bala, Anderson, and Reinhartand BALA were aware of, approved, and ratified this harassment, discrimination, and retaliation.

161.

181. Plaintiffs were harmed.

162.

182. Defendants' failure to take all reasonable steps to prevent harassment, discrimination, and retaliation was a substantial factor in causing Plaintiffs' harm.

163.

183. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiffs' rights.

164.

29.165. As further direct and proximate result of the unlawful conduct and discrimination by Defendants, Plaintiffs suffered and continue to suffer emotional distress, embarrassment, humiliation, mental anguish, and anxiety, all to their damage in an amount in excess of jurisdictional requirements and according to proof.

### TWELEIGHTH CAUSE OF ACTION

**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY AND TITLE VII**
(As to ALL PLAINTIFFS Against ALL DEFENDANTS CHENEGA ANDand APPSS) and
DOES 1 through 50)
(California Government Code § 12940(a))

30.166. Plaintiffs Wilson and Gazaway incorporate all preceding paragraphs as though fully set forth herein.

167. Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the FEHA, and as such, barred from wrongfully terminating employees. At all times herein, Defendants controlled all aspects of Plaintiffs employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

1    31.    At all times herein, there was an employer/employee relationship between Plaintiffs
2    and Defendants.

3    32.168.Upon information and belief, and based thereon, Plaintiff Gazaway was alleges that
4    Defendants retaliatorily and wrongfully terminated his employment because of his age, race, and
5    union association, and legally-protected complaint (as protected under FEHA, and Title VII, and
6    Labor Code § 1102.5).

7    33.169.Upon information and belief, and based thereon, Plaintiff Wilson alleges that
8    Defendants terminated his employment because of his age, association (race and religious), and
9    union association, legally-protected complaints (as protected under FEHA, and Title VII, and
10   Labor Code § 1102.5).). Also, because of their complaints on discrimination and retaliation.

11   34.170.Plaintiffs' respective employment was terminated as a result of Defendants'
12   violation of fundamental public policies. It is against fundamental California public policy,
13   grounded in the FEHA including, but not limited to, California Government Code section 12940(a)
14   and other statutes, to discriminate on the basis of age, race, association (race and religion), and
15   union association, and to retaliate against an employee for opposing and complaining about
16   practices made unlawful by FEHA. Pursuant Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-
17   2, it is unlawful for an employer to discharge any individual or otherwise discriminate against any
18   individual because of protected activity or protected category.

19   35.171.Defendants SiudaIUDA, Bala, Anderson, and Reinhartand BALA were aware of,
20   approved, and ratified this discrimination, retaliation, and wrongful termination.

21   36.172.The above-described conduct of Defendants constitutes discrimination, retaliation,
22   and the wrongful termination of Plaintiffs in violation of public policy embodied in FEHA,
23   codified at California Government Code sections 12900-12996, as well as Civil Code sections
24   51.7, 52.1, 52.4, and 1708.6, and the California Constitution, Article I, Section 8.

25   37.173.A tortious termination subjects the employer to "liability for compensatory and
26   punitive damages under normal tort principles." *Gantt v. Sentry Insurance* (1992) 1 Cal. 4th 1083,
27   1101.

28

-33-

38.174. As a direct and proximate result of the unlawful conduct of discrimination by Defendants, Plaintiffs have suffered and continue to suffer damages including but not limited to the loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiffs would have received had they not been terminated by Defendants.

39.175. As a further direct and proximate result of the unlawful conduct and discrimination by Defendants, Plaintiffs have suffered, and continue to suffer, emotional distress, embarrassment, humiliation, mental anguish, and anxiety, all to their damage in an amount in excess of jurisdictional requirements and according to proof.

176.   Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiffs' rights. Therefore, in addition to compensatory damages, Plaintiffs are entitled to recover liqudated and punitive damages from Defendants in an amount according to proof.

#

#

#

## THIRTEEN CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION OF TITLE VII
### (As to ALL PLAINTIFFS Against DEFENDANTS NASA, CHENEGA ANDand APPS)

177.   Plaintiffs Wilson and Gazaway incorporate all preceding paragraphs as though fully set forth herein.

178.   Employer Fiore and joint employer Defendants NASA, CHENEGA and APPS were at all times material hereto a joint employer within the meaning of the Title VII, and as such, barred from wrongfully terminating employees. At all times herein, Defendants controlled all aspects of Plaintiffs' employment including but not limited to hiring, maintaining employment, discipline, supervision, and control of their day-to-day activities.

179.   Upon information and belief, and based thereon, Plaintiff Gazaway alleges that Defendants retaliatorily and wrongfully terminated his employment because of his age, race, and

union association (as protected under Title VII) and in retaliation for his complaints on discrimination and retaliation.

180.   Upon information and belief, and based thereon, Plaintiff Wilson alleges that Defendants terminated his employment because of his age, association (race and religious), and union association (as protected under Title VII)). Also, because of their complaints on discrimination and retaliation and in retaliation for his complaints on discrimination and retaliation.

181.   Pursuant Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, it is unlawful for an employer to discharge any individual or otherwise discriminate against any individual because of protected activity or protected category.

182.   Suida, Bala, Anderson, Reinhart, were aware of, approved, and ratified this discrimination, retaliation, and wrongful termination.

183.   As a direct and proximate result of the unlawful conduct of discrimination by Defendants, Plaintiffs have suffered and continue to suffer damages including but not limited to the loss of wages, salary, benefits, and other employment and retirement benefits that Plaintiffs would have received had they not been terminated by Defendants.

184.   As a further direct and proximate result of the unlawful conduct and discrimination by Defendants, Plaintiffs have suffered, and continue to suffer, emotional distress, embarrassment, humiliation, mental anguish, and anxiety, all to their damage in an amount in excess of jurisdictional requirements and according to proof.

185.   Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs, with an improper and evil motive amounting to despicable conduct, and in conscious disregard of Plaintiffs' rights. Therefore, in addition to compensatory damages, Plaintiffs are entitled to recover punitive damages from Defendants in an amount according to proof.

40.

## **PRAYER**

-35-

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiffs pray for judgment against Defendants NASA, CHENEGA, APPSPARAGON, SIUDA, and BALA:

1. For past and future compensatory damages, according to proof;

2. For pre- and post-judgment interest at the legal rate;

3. For exemplary, liquidated damages, and and punitive damages according to proof;

4. Injunctive, equitable, and declaratory relief;

5. For additional economic losses and costs incurred by Plaintiffs in establishing the claims against Defendants;

6. Attorney's's fees and costs of suit; and

7. For such other and further relief, the Court deems proper.

Dated: December 18September 15, 2023                                BENTON EMPLOYMENT LAW

                                                    /s/ Chambord Benton-Hayes
                                                    Chambord Benton-Hayes
                                                    Attorney for Plaintiffs
                                                    Cameron Gazaway and
                                                    Robert Wilson

## DEMAND FOR JURY  TRIAL

PLAINTIFFS hereby demand a trial by jury.


Dated: December 18September 15, 2023                    BENTON EMPLOYMENT LAW


                                        */s/ Chambord Benton-Hayes*
                                        Chambord Benton-Hayes
                                        Attorney for Plaintiffs
                                        Cameron Gazaway and
                                        Robert Wilson

FIRST AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL